PEOPLE v SMITH

1. COURTS—TRIAL—CONDUCT OF TRIAL—DISCRETION.

A trial judge has great power and wide discretion in controlling the course of a trial and in exercising control over the conduct of witnesses and attorneys.

2. COURTS—TRIAL—CONDUCT OF TRIAL—WITNESSES—JUDICIAL QUESTIONING.

A trial judge may properly participate in the questioning of witnesses; judicial questioning should be designed to produce fuller and more exact testimony, and to clarify points and elicit additional facts.

3. COURTS—TRIAL—CONDUCT OF TRIAL—WITNESSES—JUDICIAL QUESTIONING—JURY TRIAL.

A judge must be especially careful that his questions or comments do not indicate partiality where the case is being tried before a jury; his questions may not be intimidating, argumentative, prejudicial, unfair or partial, and he should avoid any invasion of the prosecutor's role.

4. TRIAL—NEW TRIAL—COURTS—WITNESSES—JURY TRIAL—JUDICIAL QUESTIONING.

A new trial should be ordered where the judge's questions and comments may well have unjustifiably aroused suspicion in the mind of the jury as to a witness's credibility, and where partiality quite possibly could have influenced the jury to the detriment of a defendant's case.

5. CRIMINAL LAW—COURTS—WITNESSES—EXPERT WITNESSES—JUDICIAL QUESTIONING—INSANITY.

The questioning of a defendant's expert witness by the trial judge, where the defendant's only defense was insanity, the witness was the defendant's only expert witness, and the trial court's question stressed to the jury only that part of the

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 75 Am Jur 2d, Trial § 30 *et seq.*
[5] 31 Am Jur 2d, Expert and Opinion Evidence § 85 *et seq.*
[6] 75 Am Jur 2d, Trial § 166.

witness's testimony which indicated that the defendant might have known right from wrong at the time of the crime and thus could not sustain his insanity defense, was improper.

6. APPEAL AND ERROR—FAILURE TO OBJECT—FAIR TRIAL—PRESERVING QUESTION.

Failure to object at trial normally precludes appellate review; however, such a failure will not preclude review where the alleged misconduct has resulted in denial of a fair trial, especially where the objection concerns the trial judge's conduct and must be made to the trial judge himself.

Appeal from Muskegon, James F. Schoener, J. Submitted June 2, 1975, at Grand Rapids. (Docket No. 22036.) Decided September 11, 1975.

Reuben Smith was convicted of armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard J. Pasarela,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Dennis M. Powers,* Special Assistant Attorney General, of counsel), for the people.

*Loeks, Buth, Wood & Weidaw,* for defendant.

Before: McGREGOR, P. J., and D. E. HOLBROOK and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendant was convicted by a Muskegon County Circuit Court jury of armed robbery, MCLA 750.529; MSA 28.797. He was subsequently sentenced to a term of 5 to 20 years and now appeals of right.

The important facts concerning the robbery are not in dispute. In brief, defendant allegedly entered a Muskegon grocery store at approximately 11 p.m. on July 30, 1972. According to the com-

plainant-store-owner George Druckenmiller, defendant, wielding a pistol, confronted him at the back of the store and demanded the money in the cash register. Mr. Druckenmiller attempted to get a shotgun from a bathroom in the rear of the store and the two men scuffled. The robber wrestled the shotgun away from Druckenmiller. The robber then made his way to the front of the store, demanded cash and was given approximately $55. He exited with the money but returned briefly with Druckenmiller's shotgun, which he put back inside the store. Prior to trial, defendant had been declared incompetent to stand trial. He was treated for 13 months and released for trial. At trial, defendant's only defense was insanity.

On appeal, defendant raises three claims of error. First, defendant contends that the trial judge's questioning of defendant's sole expert witness, Dr. Roger Olive, was improper and denied defendant a fair trial. Dr. Olive, a psychologist who had examined and treated defendant for a 13-month period, testified on direct examination that, at the time of the robbery, defendant was a schizophrenic and:

"It would seem to me that, first of all, Reuben was mentally ill. He had been in a continuing process from relatively early development.

"The second thing is that he broke under stress when having to defend himself from a great deal of harm and danger, and therefore he wasn't fully aware even though he may have known right from wrong at the time the offense was committed—he wasn't aware of the rightness or wrongness of the act.

"Secondly, in order to defend himself from possible death, and to preserve his life, that he did what he did; and that what he did was irresponsible."

After the prosecutor had completed cross-exam-

ining Dr. Olive, the trial judge asked the questions which defendant challenges on appeal:

"*Q.* Doctor, you are familiar with Ames Robey?
"*A.* Yes.
"*Q.* In fact, he is the medical chief of your—
"*A.* Not of our facility. His is the Forensic Center, yes.
"*Q.* Do you know of his testimony in the case of *People versus Martin,* in which Dr. Robey stated that a schizophrenic could know right from wrong and resist an impulse to commit a crime?
"*A.* Yes.
"*Q.* Do you agree with that?
"*A.* Yes.
"*The Court:* That is all. You may step down."

The court was referring to the case of *People v Martin,* 386 Mich 407; 192 NW2d 215 (1971), *cert den* 408 US 929; 92 S Ct 2505; 33 L Ed 2d 342 (1972). In the *Martin* case, Dr. Robey was one of four expert witnesses at trial. After three psychiatrists had testified that they had examined defendant and had found him to be suffering from a personality disorder, the prosecutor called Dr. Robey as a rebuttal witness. According to the *Martin* opinion, as the trial court here noted, Dr. Robey testified that "a schizophrenic *could* know right from wrong and resist an impulse to commit a crime". (Emphasis supplied.) *Id.* at 412.

A trial judge has "great power and wide discretion" in controlling the course of a trial and in exercising control over the conduct of witnesses and attorneys. *People v Cole,* 349 Mich 175, 199; 84 NW2d 711 (1957), *People v Gray,* 57 Mich App 289, 294; 225 NW2d 733 (1975). The judge may properly participate in the questioning of wit-

nesses, *id.* Such judicial questioning should be designed to "produce fuller and more exact testimony", *Simpson v Burton,* 328 Mich 557, 564; 44 NW2d 178 (1950), and to "clarify points and elicit additional facts", *People v Davison,* 12 Mich App 429, 434; 163 NW2d 10 (1968). Where a case is being tried before a jury, however, the judge must be especially careful that his questions or comments do not indicate partiality. *People v Young,* 364 Mich 554; 111 NW2d 870 (1961). His questions may not be "intimidating, argumentative, prejudicial, unfair or partial". *People v Wilder,* 383 Mich 122, 124; 174 NW2d 562 (1970). Additionally, "a judge before whom a jury case is being tried should avoid any invasion of the prosecutor's role". *People v Cole, supra,* at 196.

It is not the number of questions asked by the court, but the content of the questions and their possible impact on the jury which is crucial to an appellate review. Appellate courts in this jurisdiction have carefully scrutinized substantial claims of judicial partiality and have not required a specific showing of prejudice where such partiality is demonstrated. A new trial has been ordered where a judge's questions and comments *"may well have unjustifiably aroused suspicion in the mind of the jury"* as to a witness' credibility, (emphasis supplied), *Simpson v Burton, supra,* at 563–564, and where partiality *"quite possibly could have influenced the jury to the detriment of defendant's case"*, (emphasis supplied), *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972). See also *People v Young, supra,* at 559.

We find, in the instant case, that the court's questioning of defendant's expert witness was improper and requires our reversal of defendant's conviction and remand for a new trial. The court's

introduction of Dr. Robey's opinion was improper as a matter of fairness to defendant.

We find from a review of the record that the trial court's questioning could have prejudiced defendant's right to a fair trial. Defendant's only defense was insanity. Dr. Olive, the witness whom the court questioned, was defendant's only expert witness. Dr. Olive had just finished over 50 pages of transcript testimony in which he detailed his belief that defendant was a schizophrenic, that the robbery was a psychotic act and that defendant was not aware of the propriety of the act at the time he did it. Although Dr. Olive testified that defendant, in general, might have known right from wrong at the time of the robbery, he stated that defendant did not know whether the act of robbery itself was right or wrong because of defendant's schizophrenic hallucinations. The trial court, in introducing the opinion of Dr. Robey, stressed to the jury only that part of Dr. Olive's testimony which indicated that defendant might have, in general, known right from wrong. As such, the court's questions were of the type that, more properly, should have been asked by the prosecutor.

Dr. Olive's testimony was frequently couched in medical terminology. It is conceivable that the jury could have resolved any confusion over Dr. Olive's testimony by focusing on the extrajudicial opinion of Dr. Robey as stressed by the court. We find it just as conceivable that the jury could have combined this statement with earlier questioning of defendant by the court and viewed the court's statements as expressing an opinion that defendant knew right from wrong at the time he committed the robbery and, thus, could not sustain his insanity defense.

We find the case of *People v Young,* 364 Mich 554; 111 NW2d 870 (1961), to be persuasive precedent. There, as here, defendant was committed to treatment for a period prior to trial. In *Young,* as here, defendant's only defense was insanity. Defendants in both cases presented only one expert witness and, in both cases, the expert testified that defendant was a schizophrenic and was unable to tell right from wrong at the time of the crime. In each case, the judge asked questions which were more appropriate to questioning by the prosecutor. The Court in *Young* found partiality in the court's questions and reversed defendant's conviction without an absolute finding of prejudice to defendant. Rather, it deemed the court's questions as "error which *may* have prejudiced the result". (Emphasis supplied.) *Id.* at 559.

Plaintiff, on appeal, contends that the trial court's questioning was designed "to clear up uncertainties in Dr. Olive's testimony". We disagree. Plaintiff's contention is supported only by a parenthetical list of transcript page numbers, which ostensibly indicate "uncertainties" in Dr. Olive's testimony. Plaintiff does not explain these "uncertainties" and our reading of the pages cited by plaintiff discloses none.

Plaintiff also claims that defendant's failure to object to the trial court's questioning of Dr. Olive precludes appellate review. While a failure to object at trial normally precludes appellate review, such a failure will not do so if the alleged misconduct has resulted in a denial of a fair trial. As we decided in *People v Roby, supra,* at 389, the failure to object is especially not a bar where, as here, the objection concerning the trial judge's conduct must be made to the trial judge himself. As we have noted before:

"we do not think that a lawyer should be put in the position of challenging such conduct and thereby possibly incurring the judge's displeasure".

*People v Eglar,* 19 Mich App 563, 565; 173 NW2d 5 (1969).

In view of our disposition of this issue, we do not deem it necessary to discuss defendant's other claims of error. However, we note that the record does not disclose whether a competency hearing was conducted subsequent to defendant's release to the court from the Center for Forensic Psychiatry as was then required by MCLA 767.27a; MSA 28.966(11).[1] We suggest that such a hearing be conducted prior to defendant's new trial. *People v Lucas,* 393 Mich 522; 227 NW2d 763 (1975).

Reversed and remanded.

---

[1] Repealed by 1974 PA 258; MCLA 330.1001 *et seq.;* MSA 14.800(1) *et seq.,* effective one year after August 6, 1974. Provisions of the new enactment governing competency to stand trial are found at MCLA 330.2020–330.2044; MSA 14.800(1020)–14.800(1044).