PEOPLE v MOORE

Docket No. 84693. Submitted April 13, 1987, at Detroit. Decided July 20, 1987.

Ernest J. Moore was convicted of larceny from a person following a jury trial in Detroit Recorder's Court, Warfield Moore, Jr., J. Defendant received a sentence of from three to ten years in prison and he appealed, claiming, inter alia, that comments and questions made by the trial judge in the course of the trial were improper and denied him a fair trial.

The Court of Appeals *held:*

The questions and comments by the trial judge clearly crossed the line of judicial propriety. His comments and questions were argumentative, prejudicial and invaded the prosecutor's role. Comments of "How about that: We got him" and "We got him taking the watch" amount to a finding from the bench of defendant's guilt. The trial judge was not the neutral and detached magistrate of justice that any defendant is entitled to expect in a criminal trial.

Reversed and remanded for a new trial before a different judge.

1. CRIMINAL LAW — TRIAL — EXAMINATION OF WITNESSES BY TRIAL JUDGE.

A trial judge in a criminal jury trial must avoid any invasion of the prosecutor's role and must exercise caution so that any questions asked of witnesses by him will not be viewed as being intimidating, argumentative, prejudicial, unfair or partial.

2. CRIMINAL LAW — TRIAL — FAIR TRIAL — EXAMINATION OF WITNESSES BY TRIAL JUDGE.

A defendant is denied a fair trial where the trial judge's ·questions and comments may well have aroused suspicion in the mind of the jury as to a witness's credibility, and where

REFERENCES

Am Jur 2d, Trial §§ 87 *et seq.*; 113-115.

Gestures or facial expressions of trial judge in criminal case, indicating approval or disapproval, belief or disbelief, as grounds for relief. 49 ALR3d 1186.

partiality quite possibly could have influenced the jury to the detriment of the defendant's case.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Carla J. Johnson,* for defendant on appeal.

Before: J. H. GILLIS, P.J., and BEASLEY and SAWYER, JJ.

PER CURIAM. Defendant was convicted, following a jury trial, of larceny from a person. MCL 750.357; MSA 28.589. He was thereafter sentenced to serve from three to ten years in prison, with the sentence to run consecutive to a sentence he had been serving in a halfway house. Defendant appeals and raises three issues, one of which is dispositive.

Defendant first argues that there were comments and questions made by the trial judge during the course of trial which were improper and, therefore, denied him a fair trial. We agree. This Court, in *People v Sterling,* 154 Mich App 223, 228; 397 NW2d 182 (1986), discussed the propriety of questions and comments by a trial judge during a jury trial:

A trial court may question witnesses in order to clarify testimony or elicit additional relevant information. See MRE 614(b); *People v Pawelczak,* 125 Mich App 231, 236; 336 NW2d 453 (1983). However, the court's discretion in questioning witnesses is not unlimited. The court must avoid any invasion of the prosecutor's role and exercise caution so that its questions will not be intimidating,

argumentative, prejudicial, unfair or partial. *People v Cole,* 349 Mich 175; 84 NW2d 711 (1957); *People v Jackson,* 97 Mich App 660, 662; 296 NW2d 135 (1980). The test is whether "a judge's questions and comments '*may* well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, . . . and whether partiality '*quite possibly could* have influenced the jury to the detriment of defendant's case.' " *People v Redfern,* 71 Mich App 452, 457; 248 NW2d 582 (1976), citing *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975). [Emphasis in original.]

Among the trial court's more egregious comments in the case at bar were the following:

> *The Court:* And who were these people on top of you at that time?
> *The Witness:* Andre, Ernest, and his brother Rodney.
> *The Court: How about that. We got him.* He doesn't know who did it, but they were all there.
> *Mr. Lazar [Defense Counsel]:* You make a good witness, your Honor.
> *The Defendant:* That's for sure.
> *Q.* (By Mr. Lazar, continuing): Let me ask you this, Mr. Arnold, you then testified on direct examination after these minutes went by that you got up and recognized that something was missing from you, is that correct, or—
> *A.* Right.
> *Q.* And when you got up, and noticed that there was something missing, as you say, where were these three individuals at that particular moment?
> *Mr. Thomas [Prosecutor]:* Your Honor, I have to object to that characterization as noticing that something was missing. The person said that it was ripped off from his arms—his neck—it was broken off—
> *Mr. Lazar:* I object to that, your Honor. He said —on my notes it indicates—
> *The Court:* I don't care what your notes indicate.

He said he saw Andre take the chain from his neck.

Did you not testify to that?

*The Witness:* Yes.

*The Court:* He said he saw him take the chain from his neck.

*Mr. Lazar:* I believe he never testified to that. All right. He says he noticed things missing when he got up.

*The Court:* He had it when they started beating him and *it is his testimony that he saw your client take a watch, saw your client take a chain—he testified to all of that sir.*

* * *

*Mr. Thomas:* Your Honor, he's mixing apples and oranges.

*The Court:* He certainly is. You see the witness has testified to chains being removed from him on several occasions, Counsel, and you have to get into the time frame. That's why we want to talk about time frame. What he's saying that that answer was when he was on the ground, *he says that he testified that he didn't know who took his chains off* when he was on the ground because he had more than one, but he does know who took the chains. That, *he does know, that on one occasion, Mr. Moore took his chain off.*

*Mr. Lazar:* I am not sure if I agree with your Honor.

*The Court:* I don't care whether you agree with me or not. I'm talking about the testimony of the witness.

*Mr. Lazar:* All right. Let me ask the witness—

*The Court:* He's saying—wait a minute. Wait a minute. He can only answer the question. He says —when you asked—that's why you ask these questions, do you know who took your chains. He answers, no, but he says—he's talking about when he was on the ground. That is consistent with his testimony as I recall it to be. *But he did testify earlier that chains were taken at various times and at one time one chain was taken by your*

*client,* one more, or like one chain was taken by this other Andre fellow and then there was some other chain was taken—

\* \* \*

*The Court:* He [defendant] stopped Andre and all of them and took his watch at that time. Is that what you're saying?

*The Witness:* Yes. It is.

*The Court: We got him* [defendant] *taking the watch.* [Emphasis added.]

The questions and comments by the trial judge clearly crossed the line of judicial propriety. The judge's comments and questions were argumentative, prejudicial and invaded the prosecutor's role. Indeed, the judge's comments of "How about that. We got him" and "We got him taking the watch" amount to a finding from the bench of defendant's guilt. Clearly, the judge was not the neutral and detached magistrate of justice that any defendant is entitled to expect in a criminal trial. The judge's conduct so taints the trial that we have no choice but to reverse defendant's conviction and sentence and remand the case for a new trial.

We do note that, while defense counsel did object at least at one point during the judge's comments, not all of the judge's comments and questions were objected to. There exists a conflict in this Court concerning whether a defendant must object to a trial court's conduct or questioning in order to preserve the issue for appellate review. In *Sterling, supra,* this Court concluded that it is unnecessary to object to a trial judge's comments and questions since defense counsel may be understandably reluctant to challenge the judge's own behavior on the bench. See also *People v Smith,* 64 Mich App 263; 235 NW2d 754 (1975); *People v Redfern,* 71 Mich App 452; 248 NW2d 582 (1976). However, this Court in *People v Burgess,*

153 Mich App 715; 396 NW2d 814 (1986), concluded that, where there was no objection at trial, the issue would not be reviewed absent manifest and serious error. The *Burgess* Court relied upon *People v Bouknight,* 106 Mich App 798, 807; 308 NW2d 703 (1981), rev'd on other grounds 419 Mich 458; 355 NW2d 592 (1984), in reaching this conclusion. However, an examination of *Bouknight* reveals that the cases relied upon by *Bouknight* in reaching this holding, *People v Therrien,* 97 Mich App 633; 296 NW2d 8 (1979), and *People v Stinson,* 88 Mich App 672; 278 NW2d 715 (1979), did not involve the issue of improper comments or questions by trial judges.

This panel is not of one mind on the issue of the necessity of objecting to preserve the issue for appeal.[1] However, we do agree that defense counsel's objection in the case at bar was sufficient to preserve the issue.

While our disposition of this issue renders it unnecessary to consider defendant's remaining issues, we note that defendant may have a meritorious issue concerning violation of the 180-day rule in regards to a speedy trial. However, the record before us is insufficient to determine whether the delay in bringing defendant to trial is attributable to the prosecutor or to defendant himself. Therefore, defendant is free to raise this issue in the trial court after remand and establish the appropriate record for the resolution of this issue in the trial court.

Defendant's conviction and sentence are vacated and the matter is remanded to the trial court for further proceedings consistent with this opinion.

---

[1] Judges GILLIS and BEASLEY would require at least one objection on the record at some point during the proceedings. Judge SAWYER would not require an objection for the reasons stated in *Sterling, supra.*

Furthermore, the Recorder's Court is directed to assign this case to a new trial judge.