PEOPLE v CONYERS

Docket No. 128129. Submitted May 7, 1992, at Detroit. Decided May 19, 1992, at 9:20 A.M.

Lenard S. Conyers was convicted by a jury in the Detroit Recorder's Court, Warfield Moore, Jr., J., of carrying a concealed weapon. He appealed, claiming in part that the trial judge deprived him of a fair trial by making improper comments about, and posing improper questions to, jurors, witnesses, and defense counsel.

The Court of Appeals *held:*

The trial judge's excessive interference in the examination of witnesses, repeated rebukes of, and disparaging remarks directed at, defense counsel, and marked impatience displayed an attitude of partisanship, resulted in the denial of a fair trial, and requires a new trial.

1. The trial judge gave the jurors a confusing explanation of the presumption of innocence and intimidated the jurors into disclosing their likely verdict before any evidence had been presented.

2. The judge's comments about the problem of guns in society seemed to invite the jurors to convict the defendant as part of their civic duties.

3. The judge's comments regarding the expected length of the trial could have led the jurors to conclude that the defendant was confronted with an open-and-shut case.

4. The judge's comments about his impending reelection campaign suggested to the jurors that he was "tough on crime" and that he was not the one who was wasting their time in a trial of an obviously guilty defendant.

5. The judge displayed bias in a comment he made about the defendant and in remarking that a witness need not be called because his testimony would probably be exculpatory.

Reversed and remanded for a new trial before a different judge.

REFERENCES

Am Jur 2d, Trial §§ 274, 275, 277.

Prejudicial effect of trial judge's remarks, during criminal trial, disparaging accused. 34 ALR3d 1313.

1. CRIMINAL LAW — JURY TRIALS — EXAMINATION OF WITNESSES BY TRIAL JUDGE.

A trial judge may question witnesses in order to clarify testimony or elicit additional relevant information, but must exercise caution and restraint to ensure that the questions are not intimidating, argumentative, prejudicial, or partial; the judge's questions and comments should not arouse unjustifiable suspicion in the minds of the jurors regarding the witness' credibility or indicate partiality against the defendant.

2. CRIMINAL LAW — JURY TRIALS — VOIR DIRE — EXAMINATION BY TRIAL JUDGE.

A trial judge, in explaining the concept of the presumption of a defendant's innocence during voir dire, should not state that the defendant should not be found not guilty before any evidence is presented without also stating that the defendant should not be found guilty before evidence is presented.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Valerie M. Steer,* Assistant Prosecuting Attorney, for the people.

*Marcia J. Covert,* for the defendant on appeal.

Before: SAWYER, P.J., and NEFF and FITZGERALD, JJ.

PER CURIAM. Defendant appeals as of right his January 5, 1990, jury conviction and January 16, 1990, sentence for carrying a concealed weapon, MCL 750.227; MSA 28.424. Recorder's Court Judge Warfield Moore, Jr., sentenced him to eighteen months to five years in prison. The guideline sentence range was zero to twelve months. Defendant raises issues of improper judicial comments, improper denial of a motion for mistrial, lack of due diligence in obtaining a witness, and abuse of discretion in sentencing. We reverse.

We are again confronted with issues of judicial

misconduct related to Judge Warfield Moore.[1] The relevant portions of Canon 3 of the Michigan Code of Judicial Conduct relating to the issues in the present case are as follows:

A. Adjudicative Responsibilities:

* * *

(8) A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of truth in respect thereto.

Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.

He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment.

In addition, Canon 2 of the Code of Judicial Conduct provides:

B. A judge should respect and observe the law and should conduct himself at all times in a man-

[1] This is at least the fifth time we have had to reverse on similar grounds jury convictions obtained in Judge Warfield Moore's court. See *People v Moore,* 161 Mich App 615; 411 NW2d 797 (1987); *People v Sterling,* 154 Mich App 223; 397 NW2d 182 (1986); *People v Audison,* 126 Mich App 829; 338 NW2d 235 (1983); *People v Hudgins,* 125 Mich App 140; 336 NW2d 241 (1983).

ner that promotes public confidence in the integrity and impartiality of the judiciary.

The record is replete with instances of highly questionable judicial conduct during the course of this trial. However, our opinion will focus primarily on those instances that have jeopardized the defendant's opportunity for a fair trial. Judge Moore was clearly "not the neutral and detached magistrate of justice that any defendant is entitled to expect in a criminal trial." *People v Moore,* 161 Mich App 615, 619; 411 NW2d 797 (1987).

I

In the present case, defendant argues that the judge denied him a fair trial by repeatedly interjecting improper and impartial comments and questions. We agree. Judge Moore's conduct in questioning witnesses and jurors constituted an abandonment of his mantle of judicial impartiality and denied defendant a fair trial.

Defendant claims the judge unjustifiably aroused suspicions in the mind of the jury with respect to the credibility of a witness and through his comments connected the defendant to conduct of which he expressed disapproval. In questioning a witness about the timing of his preliminary hearing testimony, Judge Moore volunteered:

> *The Court:* Before Thanksgiving, right? I mean you don't go to court everyday?

When the defense attorney later objected to the relevance of the prosecutor's question whether the witness called the police to offer a statement about the incident involving defendant, the judge responded:

> *The Court:* It has to do with him, when he first indicated to anybody that this man had not in his vision or from what he saw, committed a crime. That's all. It just has to do with when he first told it. That's all. And that's relevant for the jury to determine if there's credibility and weight to give to his testimony today.

Judge Moore commented numerous times during voir dire and trial that guns are a "terrible thing in society." He then instructed the jury regarding the presumption of innocence and proceeded to ask what their verdict would be before trial. Although the judge was attempting to inform the jury that before any evidence was presented they must presume defendant's innocence, it was clear from the record that many jurors felt intimidated and did not understand what he was doing:

> *The Court:* Mr. Conyers, as he sits here now, is presumptively innocent. What do we mean by that? Am I saying he is not guilty of this? No. I am certainly not saying that. As a matter of fact, I will never tell you that. That will not be my responsibility. My responsibility is to tell you what the law is, to instruct you, to see that the trial is had fairly and properly and efficiently. And it will be for you to decide, based on the evidence, that you hear, and the facts that you determine from that evidence, as to whether you believe that there is sufficient evidence to prove beyond a reasonable doubt that this man is guilty.
>
> \* \* \*
>
> But the defendant is clothed with the presumption of innocence. Now, its no sense in us sitting here and talking about presumptions, because everyday of our lives, and especially at this time of the year, when everyone is summarizing how many people have died from gun shot wounds in Detroit and everywhere else, guns are a big issue in our society.

It seems that everyday somebody—something happens with somebody relative to a gun. And so, we know there are many guns in the community. And we know, in truth, that people carry those guns because you have to have it in order that all of these things happen.

And why am I saying that to you? Because it may be, ladies and gentlemen, because the defendant is charged with this crime, that some of you say, well, I cannot presume him to be innocent. I know I haven't heard any evidence of his guilt, but because of the proliferation of guns in our community and because of all of the activity therewith, I cannot, in honesty, say as I look at Mr. Conyers, that I presume him to be innocent.

\* \* \*

*The Court:* Miss Allen, if for some reason, however, if I told you under oath, gave you a[n] oath and told you to go in and make a decision in connection with this matter and you heard no witnesses, right now, based on what I have told you and what has been said here so far, if I ask you to go in the jury room along with these eleven other persons and to render a verdict, what would your verdict be now, based on the presumption of innocence, burden of proof, and reasonable doubt? What would your verdict be right now?

\* \* \*

*Prospective Juror Number Seven:* I would want justice done.

*The Court:* Yes, ma'am. I love to hear that. What is your verdict, guilty or not guilty? In criminal cases we don't have any verdict about justice done. We have a verdict of guilty or not guilty.

See, folks, I want you to get used to that. You can't say anything else but guilty or not guilty in [a] criminal case. Did somebody—it's guilty or not guilty. What is your verdict, guilty or not guilty, if you had to go in there based on having heard no one talk but me?

*Prospective Juror Number Seven:* From the way you talked, I would have a doubt that he would be.

*The Court:* What would your verdict be?

*Prospective Juror Number Seven:* I think I would say, guilty.

*The Court:* What about that, Mr. McCoy.

*Prospective Juror Number Seven:* I feel justice should be done.

*Prospective Juror Number Twelve:* The same, guilty.

*The Court:* Guilty, is that right? What about that Miss Bobbit, guilty or I don't know?

*Prospective Juror Number Eight:* I don't know.

*The Court:* What about that Miss Smith, what would your verdict be?

*Prospective Juror Number Four:* I don't know.

*The Court:* What about that Miss Cooper, our personality person?

\*   \*   \*

*The Court:* How could you find him guilty?

*Prospective Juror Number Twelve:* I am going on looks.

*The Court:* Looks? Because he is young and black?

*Prospective Juror Number Twelve:* No.

*The Court:* Mustache or striped shirt? I mean, I'm serious. What do you see about him that makes him look guilty? Do you know what, mister? He looks enough like you to be a relative of yours. Same complexion. Same skin tone. Same mustache. I swear. To me, he looks enough like Mr. McCoy that he could be a relative of his. What do you see about him that makes you think he is guilty of anything?

*Prospective Juror Number Twelve:* A feeling I have.

*The Court:* I mean, he has not projected it. Well, you think there is a smugness about him?

*Prospective Juror Number Twelve:* Right.

\*   \*   \*

*The Court:* Pardon? I can't hear you, ma'am. Would you mind speaking up. I know you are shaking. I don't know if you are shaking because

you are scared or what. You are a secretary for the South End. Speak to us, ma'am. Do you have any reason to believe that this man—or that any crime was committed? Have you heard any evidence of that, ma'am?

*Prospective Juror Number Four:* No.

* * *

*The Court:* I don't know how to explain it. You, now, based on what we have explained, would find the defendant not guilty—who of you would do that, would you raise your hand? Miss Bobbit, you still don't know?

*Prospective Juror Number Eight:* No.

*The Court:* Why don't you know, Miss Bobbit, right now, based on what you have heard?

*Prospective Juror Number Eight:* Well . . . .

*The Court:* I can't hear you, ma'am. Would you mind shouting a little bit?

*Prospective Juror Number Eight:* I don't know.

*The Court:* You don't know. But you think you might find him not guilty?

Your name is Sheldon Taps. How are you? Sheldon Taps was a client of mine twenty years ago. I haven't seen him since. I hope that's why you came in, to see me because you remember me as your attorney. He looks just like that except twenty years younger twenty years ago.

But any way, Miss Bobbit, you still don't know why you would find—why you can't find him not guilty? You just don't know. You just have a bad feeling, is that right?

*Prospective Juror Number Eight:* Right.

After inviting the attorneys to ask the jurors anything they would like, the following exchange occurred:

*Mr. Handy [defense counsel]:* That there is a right for a person who has been accused of a crime to have the presumption of innocence around him. It's like a [sic] umbrella. It's like . . .

*The Court:* They understand what it is. Don't you all understand what the presumption of innocence is? He is presumed to be innocent.

*Mr. Handy:* I am trying to make sure.

*The Court:* They say if they hear anymore, they may go back. They understand, Mr. Handy. Let's get to something they don't understand.

\* \* \*

*The Court:* A police officer is a person who is hired to do his work, like Mr. Handy is hired to do his work and I do mine. Thank you. I am elected by you and I am running again this year.

*Mr. Handy:* But, your Honor . . .

*The Court:* And Mr. Handy even helped me in my campaign initially. But you think because of that there is any reason why you can't be mistaken or that you are infallible and to ask him about what his officers do and what they don't do and all of that, it's beyond the scope . . . .

Later, when a police officer was being cross-examined, the following exchange occurred:

*Q.* One moment. You say that an officer chased somebody else through the house. However, from the time that you got out of your plain clothes car (sic) you directed your total attention toward my client and then chased him only, correct?

*The Court:* But you asked him . . .

*The Witness:* No, sir.

*The Court:* He responded to the question that you asked, Mr. Handy. You asked him, did anybody else go in the house? And he is telling you that he has the impression that somebody else went in under these circumstances. Since you asked him the question, he gave you an answer.

Now, you want to ask him, how do you know that? He said, I just have a sense of that. That's all. I didn't see it. I didn't watch it or whatever. But I have the impression that my partner or uniformed officer, chased somebody into the house. Now you want to argue with him.

The attorney then requested that the judge allow him to pose questions regarding the witness' personal knowledge, and not just impressions, and reminded the judge that the judge had instructed the jury with regard to testimony. As the defense attorney continued cross-examination, the court again intervened:

> *Q.* Was he running as fast as he could as far as you could tell?
> *The Court:* How could he tell that?
> *Mr. Handy:* I was just asking, your Honor.
> *The Court:* How could he tell that? That's pure speculation. How fast—we have to get him out and and [sic] see if he is on steroids to know how fast he can run. How fast does he know your client can run?
> *Q.* Was he running faster than you?
> *The Court:* Apparently not. He caught him.
> *Mr. Handy:* Your honor, please.
> *The Court:* It's a silly question, counsel.

In the present case, excessive interference in the examination of witnesses, repeated rebukes and disparaging remarks directed at defendant's counsel, and marked impatience in the presence of the jury displayed an attitude of partisanship, which resulted in the denial of a fair trial. See *People v London,* 40 Mich App 124, 127; 198 NW2d 723 (1972); *United States v Coke,* 339 F2d 183, 185 (CA 2, 1964). Defense counsel also was not treated with the consideration due an officer of the court. *People v Wigfall,* 160 Mich App 765, 775; 408 NW2d 551 (1987).

The trial court may question witnesses in order to clarify testimony or elicit additional relevant information. MRE 614(b); *People v Sterling,* 154 Mich App 223, 228; 397 NW2d 182 (1986); *People v Pawelczak,* 125 Mich App 231, 236; 336 NW2d 453

(1983). However, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. *Sterling, supra; People v Cole,* 349 Mich 175; 84 NW2d 711 (1957); *People v Jackson,* 97 Mich App 660, 662; 296 NW2d 135 (1980). The test is whether the "judge's questions and comments '*may* well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, . . . and whether partiality '*quite possibly could* have influenced the jury to the detriment of defendant's case.'" *Sterling, supra,* quoting *People v Redfern,* 71 Mich App 452, 457; 248 NW2d 582 (1976), citing *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975) (emphasis in original).

There is no question that Judge Moore crossed the line of impartiality when he instructed the prospective jurors that although defendant was presumed innocent, he would never tell them the defendant was not guilty. Again, it appears that Judge Moore was attempting to explain to the jury that he was not the factfinder. However, by stating that he would not say defendant is not guilty without explaining that he also would not say defendant is guilty, he presented bias that was readily apparent to at least one juror. Judge Moore's explanation of the presumption of innocence was very confusing, and his intimidation of the jurors and the attorneys appeared on the record to be almost intentional. His comments about the problem with guns seemed to invite the jurors to convict the defendant as part of their civic duty. His repeated comments about the expected length of the trial could have led jurors to the conclusion that this was an open-and-shut case. However, he did try to balance the comments by explaining that the trial would be short because

it was not a complicated case. He later told the jury that he would see them at two o'clock and hoped for a verdict by three o'clock.

At the trial, the judge not only became a commentator and interpreter of the witness' testimony, but he also volunteered information that was not in evidence. His campaigning from the bench also had the appearance of showing the jury that he was "tough on crime" and that he wasn't the one wasting the jury's time in a trial of an obviously guilty defendant. His ruling that a witness need not be called, and that the witness' testimony would probably be exculpatory anyway, demonstrated bias. Judge Moore's attitude toward the defendant is aptly summarized by his comment, "He can go pee in the cup in the lock up."[2] For these reasons alone reversal is required.

II

Because of our ruling with regard to the first issue, we find it unnecessary to discuss defendant's other grounds for reversal. However, it is quite clear that had we not reversed on the basis of the first issue, we would have on the basis of at least one of the other issues for the same reasons mentioned previously. The instances of impropriety were too numerous to count, too pervasive to find harmless, and too prejudicial to tolerate. We would seriously caution the trial judge to limit his comments to those that are appropriate to the administration of justice.

Defendant's conviction is reversed, sentence is vacated, and the case is remanded for a new trial before a different judge of the Detroit Recorder's Court.

Reversed and remanded.

---

[2] This comment was one of the few that were not heard by the jury.