*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES JOEL CORNELL,

        Defendant-Appellant.

UNPUBLISHED
May 28, 2019

No. 339990
Benzie Circuit Court
LC No. 17-002484-FC

Before: SHAPIRO, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant, James Joel Cornell, appeals by right his jury trial conviction of first-degree criminal sexual conduct (CSC I), MCL 750.520b, arising out of his sexual penetration of a 15-year old student to whom he gained access through his status as a contractual service provider for the Benzie County Central school system. The trial court sentenced defendant to serve 14 to 40 years in prison. We affirm.

## I. BASIC FACTS

At the time of the sexual conduct at issue, defendant was the new coach of the junior varsity wrestling team at Benzie Central High School, and the complainant was a 15-year old student at the school and a friend of defendant's daughter.[1] Evidence admitted at trial established that defendant recruited the complainant to be the manager of the wresting team, despite her prior lack of knowledge about, attendance at, or participation in the sport. According to the complainant's mother, on January 12, 2015,[2] she signed a "consent form" drafted by

---

[1] The complainant was 15-years old at all times relevant to the charges against defendant.

[2] That the consent form bares the date of January 21, 2015, raises the possibility that defendant drafted it after the events in question. Nevertheless, the complainant's mother testified that she frequently transposes numbers, but said that she was "a hundred percent" sure that she signed the form before the Petoskey wrestling match on or around January 17, 2015.

defendant that stated, among other things, that defendant could transport the complainant to and from school functions and that the complainant could spend the night at defendant's house before early-morning sports functions or when she cleaned defendant's apartment.

The complainant spent the night of January 16, 2015, at defendant's two-bedroom apartment. The complainant's mother testified that she allowed the complainant to spend the night there so she could ride with defendant to an early-morning wrestling match in Petoskey and because she believed that other schoolmates who were going to the wrestling match would also be spending the night there, among them, defendant's daughter. As it turned out, no other schoolmates spent the night. The complainant testified that defendant's ex-girlfriend and her child were present at the apartment, and defendant testified that, in addition to these, his ex-wife and her daughter were also present.

The complainant testified that once she got to defendant's apartment, she did her homework on his bed while defendant went to take a shower. When he came back to the bedroom, he tried to talk her into having sex, but she said, "No." Defendant persisted, which the complainant said made her "feel like [she] was nothing like to no one, so [she] just kind of like let it be." The complainant testified that she and defendant had sex. Asked what she did while defendant was having sex with her, the complainant testified, "I didn't want to scream because he told me that he was going to take me from my mom if I told on him." Asked how that made her feel, the complainant said she did not want to be taken from her mom. The complainant testified that she did not go to defendant's house with the intention of having sex, but that he took advantage of her and sexually penetrated her. Contrariwise, defendant testified that after he got out of the shower and went to his bedroom, he lay down on the floor, and went to sleep. He said that the complainant appeared to be asleep and that he did not talk to her.

City of Frankfurt Police Officer Kevin Jewell testified that dispatch received a call for service around 11:30 p.m. from a woman who said that her ex-boyfriend was in a bedroom, behind a closed and locked door, with a 15-year-old girl.[3] Officer Jewel responded to the call and knocked on defendant's bedroom door three separate times; defendant did not open the door until the officer announced himself as a police officer. Defendant opened the door to reveal the complainant on the bed, a makeshift sleeping area on the floor, and himself out of breath, sweaty and "a little frantic." After calling the complainant's mother, Officer Jewell drove the complainant home. During the drive, the complainant offered innocent explanations for why she was in defendant's apartment. The complainant initially told multiple people that she and defendant did not have sexual relations.

---

[3] Defendant testified that he closed the bedroom door because his ex-girlfriend's six-year-old kept coming into the bedroom and disturbing him while he was trying to go to sleep, but he did not remember locking the door.

When defendant's ex-girlfriend was moving out of the apartment, she found an "affidavit for marriage" between defendant and the complainant and gave it to the police.[4] Her own suspicion piqued, the complainant's mother read the text messages on the complainant's cell phone, and then took the cell phone to the police department. Police extracted text messages dated from March 30, 2015 to April 7, 2015, that betrayed the complainant's denial of sexual contact. The complainant came forward and, as indicated, later testified at trial that she and defendant had sex.

Subsequent to his conviction and sentencing, defendant moved for a new trial based on claims of ineffective assistance of counsel and sentencing errors. The trial court held an evidentiary hearing at which defendant presented evidence of his claims. The parties stipulated that offense variable (OV) 11 (criminal sexual penetration) was improperly scored. After hearing evidence regarding defendant's claims of ineffective assistance of counsel, the trial court concluded that trial counsel's decisions constituted reasonable trial strategy, and that any deficiencies did not affect the outcome of the trial. Accordingly, the trial court denied defendant's motion for a new trial. This appeal followed.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first contends that his defense counsel rendered constitutionally ineffective assistance by failing to conduct an effective cross-examination of the complainant and by failing to impeach her with contradictory testimony from Officer Jewell and with prior inconsistent statements she made during a forensic interview. Defendant further contends that, in light of counsel's ineffective assistance, the trial court erred by failing to grant his motion for a new trial. We disagree. "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *People v Unger* (*On Remand*), 278 Mich App 210, 242; 749 NW2d 272 (2008). This Court reviews factual findings for clear error and questions of constitutional law de novo. *Id*.

The United States and Michigan constitutions guarantee a defendant's right to counsel. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). In order to demonstrate an ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and, (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. See *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012); *People v Uphaus*, 278 Mich App 174, 185; 748 NW2d 899 (2008). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but

---

[4] Officer Jewell testified that he asked defendant about the affidavit for marriage and defendant admitted to filling it out, but claimed it was a joke.

for counsel's error, "the result of the proceeding would have been different." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citation omitted). "[F]ailure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *Id*. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo,* 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Defendant asserts that he provided the names of approximately 15 witnesses that his trial counsel should have called to testify to specific instances when the complainant denied having sexual contact with him. However, our review of the record indicates that defense counsel's decision not to call these witnesses was a reasonable trial strategy and did not deprive defendant of a substantial defense. *Dixon*, 263 Mich App at 398. The complainant readily admitted on cross-examination that she initially told "numerous people," such as friends, people at school, and a deputy, that nothing happened with defendant. Thus, counsel raised the question of the complainant's credibility by presenting the jury with the complainant's own testimony that she repeatedly denied having sexual contact with defendant before appearing to change her account of events by asserting that she and defendant did have sexual contact. Calling witnesses to confirm hearing such denials arguably would not have added much to the equation. Because the complainant admitted to the denials herself, the failure to call defendant's identified witnesses in no way deprived defendant of a substantial defense. *Id*.

Defendant also argues that his counsel should have impeached the complainant's testimony by recalling Officer Jewell to the stand. According to the officer's police report, the complainant provided innocent reasons for being at defendant's apartment and in his bedroom and said nothing about having sexual contact with defendant. At trial, however, the complainant testified that she told Officer Jewell she had sex with defendant. Although it is true that defense counsel did not recall Officer Jewell to the stand to refute the complainant's testimony, counsel did undermine her testimony with questions regarding whether, following her alleged revelation, Officer Jewell then gathered any evidence or took her to see a nurse or to the hospital. By implying that the officer would have taken such actions had she actually disclosed the abuse to him, counsel's questions invited the jury to question the complainant's credibility. Defense counsel reiterated this point in his closing argument, suggesting to the jury that the complainant could not have told Officer Jewell of the abuse because he neither arrested defendant nor collected evidence. At a post-trial *Ginther*[5] hearing, counsel indicated that he could not remember why he did not call Jewell, but he "thought [the complainant's] credibility or lack of credibility was showing up on the stand." The record before us indicates that counsel took

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

measures to impeach the complainant and had a strategic reason for his chosen method of impeachment. "[W]e will not second-guess counsel's strategy with the benefit of hindsight." *Dixon*, 263 Mich App at 398.

Similarly, defendant argues that his trial counsel should have impeached the complainant with evidence that the narrative of events she provided during a forensic interview did not include allegations of sexual contact with defendant. At the *Ginther* hearing, counsel testified that he knew the complainant had not alleged sexual contact with defendant at the forensic interview, but he did not attempt to procure the transcript of the interview because he thought highlighting the complainant's various other denials would be sufficient to impugn her credibility. Further, he conceded that, in hindsight, he could have asked the complainant more about the forensic interview, but he did not want, among other things, to draw attention to the complainant's reason for initially denying the sexual contact; namely, defendant's alleged threats that she would be removed from her mother's care if she told anyone. Defense counsel also said that he did not wish to dwell on the topic because he did not want to antagonize the jury by appearing to "bully" the soft-spoken complainant or to allow the prosecutor an opportunity to rehabilitate her in a way that suggested trial counsel was being unnecessarily aggressive. Instead, he wanted the jurors to concentrate on the complainant's testimony and her inconsistent statements. Defendant's trial counsel made a strategic decision regarding the extent to which he would confront the complainant with her previous denials, and we will not second-guess that reasonable strategic decision. *Id*.

Even if we assume for the sake of argument that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, defendant is only entitled to relief if there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Trakhtenberg*, 493 Mich at 51. We find no such probability. Ample evidence corroborated the complainant's testimony that defendant sexually penetrated her. First, defendant's ex-girlfriend called the police to report that defendant was in his locked bedroom with a 15-year old. Officer Jewell had to knock three times and announce himself as a police officer before defendant opened the bedroom door. When he did, defendant was sweaty, out of breath, and "slightly frantic," and the complainant was in his bed. Further, the ex-girlfriend found in defendant's bedroom and turned over to police an "affidavit for marriage" between defendant and the complainant. Defendant also provided the complainant with a cell phone and sent a large number of text messages to her after he moved to Florida two and a half months after the incident. The texts were sexual in nature; defendant stated that he would like to have "make-up" sex with the complainant, that he had seen her nude, that she had sent him a nude photo, and that they had had sex before.[6] In the texts, defendant referred to photos of the complainant as "hot," and he referred to her as his hot "wife." He texted her that she was like a drug that he did not want to give up. Both defendant and the complainant

---

[6] In the text messages, the complainant and defendant used words of affection for each other such as "bug," "lady bug," "bug bear," "sweetheart," "sweetie," "babe," "hon," "beautiful," and "my boo," which the jury could infer were terms of endearment in an ensuing romantic relationship between defendant and the complainant.

repeatedly stated that they loved each other. Other messages indicated that defendant's plan was for the complainant to move in with him when she turned 16-years of age. In light of the foregoing, additional evidence that the complainant had initially denied sexual penetration would not have helped defendant because it would not have contradicted the strong corroborating evidence supporting the complainant's testimony. We conclude that defendant has failed to meet his burden to show that he received ineffective assistance from his trial counsel. *Trakhtenberg*, 493 Mich at 51. Accordingly, the trial court did not err in denying defendant's motion for a new trial.

## B. JUDICIAL BIAS

Next, defendant argues that the trial court acted with bias in favor of the prosecution by assisting in the admission of incriminating evidence. Again, we disagree. Defendant did not raise this issue in the trial court; therefore, our review is for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.*

A trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" in order to make the interrogation and presentation effective for the ascertainment of the truth. MRE 611(a). Additionally, "[t]he court may interrogate witnesses, whether called by itself or by a party." MRE 614(b). However, a defendant has a right to a neutral and detached judge and a trial court's examination of witnesses may not "pierce the veil of judicial impartiality." *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013) (quotation marks and citation omitted). The trial judge "must not permit his own views on disputed issues of fact to become apparent to the jury." *People v Stevens*, 498 Mich 162, 174; 869 NW2d 233 (2015) (quotation marks and citation omitted).

Defendant argues that the trial court invaded the role of the prosecutor by questioning a prosecution witness, a school payroll specialist, and showing that defendant gained access to the complainant through his role at her school, thus establishing one of the aggravating elements of the charge against defendant. MCL 750.520b(1)(b)(v).[7] Defendant overlooks the fact that, prior to the payroll specialist's testimony, the complainant and her mother testified that defendant was coaching at the school when he recruited the complainant to work with the wrestling team, and

---

[7] Defendant was charged with CSC I based on several aggravating factors. MCL 750.520b(1)(b)(v) provides in pertinent part that a person is guilty of first-degree criminal sexual conduct if the person engages in sexual penetration with another person, the other person is at least 13 but less than 16 years of age, and the "actor is an employee or a contractual service provider of the public school . . . or intermediate school district in which that other person is enrolled, or is a volunteer who is not a student in any public school . . . , and the actor uses his or her employee, contractual, or volunteer status to gain access to, or to establish a relationship with, that other person."

with him personally, thus clearly defining the circumstances under which defendant gained access to the complainant. Furthermore, defendant errs by assuming that the prosecutor's questioning of the school payroll specialist did not clearly demonstrate a relationship between the school and defendant before the trial court posed its questions. The school official read a letter from defendant's employment file that announced his hiring as the junior varsity wrestling coach and indicated that his pay would be through a company with which the district contracted. The official also read a letter announcing the termination of defendant's employment. This evidence clearly established defendant's status as a contractual service provider of the school at the time the sexual contact with the complainant occurred. The trial court's questions merely followed up and clarified a line of questioning pursued by both parties, i.e., the relationship between the school and the company the school paid to manage contractual employees such as defendant. Questions intended to clarify points or to elicit additional relevant evidence are not improper. *McDonald*, 303 Mich App at 437.

Defendant also argues that the trial court demonstrated bias by instructing the prosecution on how to admit documentary evidence; specifically, the "marriage certificate" and a consent-to-transport form signed by the complainant's mother. However, our review of the record convinces us that the trial court was merely instructing both parties on how to comply with the rules of evidence regarding the admission of documents. The trial court prompted defendant's counsel to object to admission of the "affidavit of marriage" on the ground that it was a copy, and reminded the prosecutor to present the original documents. See MRE 1002 (best evidence rule). The trial court's instructions helped ensure that the parties complied, and demanded compliance, with the court rules. The discussions did not involve "disputed issues of fact" nor the court's views on such issues. See *Stevens*, 498 Mich at 174.

Defendant further argues that the trial court helped lay a foundation to admit text messages found on the complainant's phone. We disagree. The prosecutor questioned Chief of Police Rob Lozowski on what he did with the complainant's phone, and Lozowski responded that he had collected it from an evidence locker before providing it to the State Police. Defense counsel asked about the procedures followed when officers put evidence in the locker and Lozowski removed it. The trial court then sought to clarify these procedures by asking whether officers documented when they placed evidence into or removed it from an evidence locker. Questions intended to clarify points or to elicit additional relevant evidence are not improper. *McDonald*, 303 Mich App at 437.

The conduct of a trial judge can violate a defendant's "constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171. This is not the case here. Defendant has pointed to no record evidence suggesting any bias of the trial court in favor of the prosecution. The trial court prompted defense counsel to raise objections to the prosecutor's attempt to enter copies of documents into evidence, and addressed both parties in its discussion of the rules of evidence. Defendant acknowledges that the trial court spoke to the parties in a neutral way and did not exhibit hostility toward defendant. See *People v Conyers*, 194 Mich App 395, 404-405; 487 NW2d 787 (1992) (indicating that a trial court must ensure that its questions are not "intimidating, argumentative, prejudicial, unfair, or impartial"). In addition, the trial court asked permissible questions following up on and clarifying lines of questioning pursued by both

parties. In sum, when it comes to the trial court's conduct, we find no plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

## C. OFFENSE VARIABLES

Defendant contends the trial court erred when scoring OVs 8 and 19. This Court reviews the trial court's factual determinations at sentencing for clear error; findings of fact must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### 1. OV 8

Defendant argues that the trial court should have assessed OV 8 at 0 points rather than at 15 points. We disagree.

OV 8 considers victim asportation or captivity. An assessment of 15 points is prescribed where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Because OV 8 specifically focuses on conduct beyond the time necessary to commit the offense, conduct beyond the particulars of the sentencing offense may be considered. *People v McGraw*, 484 Mich 120, 126; 771 NW2d 665 (2009). In *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017), quoting MCL 777.38(1)(a), the Court stated that the plain language of the statute indicated that asportation occurs when "a victim is carried away or removed 'to another place of greater danger or to a situation of greater danger,' " including "the movement of a victim that is only incidental to that offense." To assess points for OV 8, the asportation need not be accomplished by force. *People v Spanke*, 254 Mich App 642, 646-647; 658 NW2d 504 (2003), overruled on other grounds by *Barrera*, 500 Mich at 22.

The trial court assessed OV 8 at 15 points because defendant moved the complainant from her home to his home in order to victimize her, noting that defendant manipulated both the complainant and her mother into thinking the move necessary to facilitate transportation to a wrestling match so that the complainant would go willingly. In what borders on the absurd, defendant argues that he actually transported the complainant to a place of greater safety rather than greater danger, because he brought her to his apartment, where there were several people, including other adults, and he highlights the fact that one of those adults called the police. Not only did defendant place the complainant in greater danger by transporting her to his apartment, once there, he isolated her in his bedroom with him, claiming that there was nowhere else to house her, and closed and locked the door. A preponderance of the evidence supports the trial court's determination that defendant moved the complainant to a place of greater danger when he brought her into his bedroom where he could sexually assault her without interference from others. See *People v Cox*, 268 Mich App 440, 453-455; 709 NW2d 152 (2005) (upholding an assessment of 15 points for OV 8 where the defendant transported the victim to his home on the ground that it was a place of greater danger); *Barrera*, 500 Mich at 21-22 (upholding an assessment of OV 8 where the defendant moved the victim from the living room to the bedroom in order to sexually assault her). Thus, the trial court did not err in scoring OV 8 at 15 points.

## 2. OV 19

Defendant further argues that the trial court should have scored OV 19 at zero points rather than 10 points, because there was no evidence that he interfered with the administration of justice. We disagree.

A trial court may assess 10 points for OV 19 where "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). The factors considered "contemplate events that almost always occur *after* the charged offense has been completed." *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). "Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice, but it is not limited to such acts." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010).

In the present case, the trial court assessed 10 points for OV 19 because defendant left the jurisdiction after the incident and allegedly frightened the complainant by telling her that if she disclosed the fact that they had sex, officials could remove her from her mother's care. Defendant contends that his moving to and returning from Florida, as well as his alleged threat to remove the complainant from her mother if she told on him, occurred before officials arrested or charged him, and thus could not be used as evidence of interfering or attempting to interfere with the administration of justice. Defendant misapprehends the law. In *People v Barbee*, 470 Mich 283, 288; 793 NW2d 120 (2010), the Michigan Supreme Court stated that a defendant's "conduct that occurs before criminal charges are filed can form the basis" of assessing OV 19. Further, interference with the administration of justice includes preventing a victim from coming forward sooner or affecting the testimony against a defendant. See, e.g., *People v Endres*, 269 Mich App 414, 421-422; 711 NW2d 398 (2006), overruled in part on other grounds by *Hardy*, 494 Mich at 438 n 18; *People v McDonald*, 293 Mich App 292, 299-300; 811 NW2d 507 (2011). Defendant's move to Florida prevented an officer from contacting him to investigate the crime, and defendant's threat to the complainant deterred her from reporting his criminal conduct. See e.g., *Endres*, 269 Mich App at 421-422; *McDonald*, 293 Mich App at 299-300; see also *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016) (noting, "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense."). Thus, a preponderance of the evidence supported the trial court's assessment of 10 points for OV 19.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Jane M. Beckering