# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID REYMUNDO OROSCO,

      Defendant-Appellant.

UNPUBLISHED
June 16, 2015

No. 319523
Ingham Circuit Court
LC No. 13-000067-FC

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

Defendant, David Reymundo Orosco, was convicted following a jury trial of four counts of criminal sexual conduct, second degree (CSC-2nd), MCL 750.520c(1)(b), and was sentenced to serve 85 months to 30 years in prison on each count, with all sentences to run concurrently. Defendant was also ordered to submit to global positioning system monitoring. He appeals as of right. We affirm.

## I. BACKGROUND FACTS

Defendant's convictions arise out of sexual abuse perpetrated on the victims, V.R. and M.R., who were the grandchildren of and were later adopted by defendant's wife. V.R. testified that one night when she was 11 years old, she had been sleeping in her bedroom when she was awakened by defendant, who had lifted her nightshirt and was touching her breasts. V.R. testified that a few weeks later defendant found her in her sister's bedroom at night and touched her breasts again. After this incident, according to V.R., defendant touched her breasts "practically every week." V.R. testified that the incidents eventually escalated to defendant touching her genitals at night.

V.R. testified that one night when she was awakened by defendant approaching her, she told him to "stop" in a loud voice, and defendant left her alone. However, she was later awakened again when she noticed defendant "spooning" or holding M.R., her sister. M.R. recalled that during this incident, she was awakened by defendant, who was lying next to her and touching her buttocks. M.R. testified that she pushed defendant's hand away twice and he put it back both times. V.R. took M.R. upstairs, and the next morning V.R. told her grandmother about defendant's assaults. V.R. testified that her grandmother sent defendant to "rehab" following her disclosure, but he returned to the family home after a few months. Eventually, V.R. confided in

-1-

an aunt, who removed V.R. and M.R. from their grandmother's home to her home. V.R. testified that she decided to report her allegations against defendant soon after moving in with her aunt.

At trial, the victims' mother testified, pursuant to MCL 768.27a, that she had also been sexually abused by defendant when she was a child. She testified that defendant began abusing her by touching her genital area over her clothes when she was in elementary school. She also described other incidents in which defendant woke her up at night and touched and stared at her breasts, as well as another incident when defendant made her touch his genitals. She said that when she was a teenager, defendant forced her to engage in intercourse on one occasion, and that the abuse ended about two years before her eighteenth birthday. As discussed in more detail below, she testified that she could not recall the dates of any of the incidents, but remembered that they happened during her childhood. With prompting, she was able to recall how old she was on certain dates when defendant was incarcerated during her childhood, but she testified that she could not be sure when the abuse occurred. She only recalled that defendant abused her before and after he was incarcerated.

Defendant testified on his own behalf at trial. He testified that he was often incarcerated during the victims' mother's youth, and that it would have been impossible for him to have abused her because he was incarcerated. He also denied touching the victims in a sexual manner. He noted that he "might touch [V.R.] when I have blackouts." He later clarified that he never touched her in a sexual manner, and that any touching occurred merely because he was trying to brace his fall. Defendant claimed that he suffered from blackouts for many years.

## II. JUDICIAL BIAS

Defendant argues that the trial judge informed the jury of her opinion through her supportive comments to the victims and her aggressive, hostile questioning of defendant. According to defendant, the court's conduct "pierced the judicial veil of impartiality," and denied him a fair trial. Defendant did not raise his claim before the trial court. Accordingly, our review is for plain error affecting substantial rights. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Defendant also argues that to the extent counsel did not object, he provided ineffective assistance. Defendant moved this Court for remand and raised an issue regarding counsel's performance in regard to the trial court's comments. This Court denied the motion, and our review of defendant's ineffective assistance of counsel claim is limited to the facts contained in the record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008).

A defendant's right to a fair and impartial trial is guaranteed by the Sixth Amendment of the United States Constitution, and article 1, § 20 of the Michigan Constitution. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). Although a trial court may question witnesses in order to clarify testimony or elicit additional relevant information, the court's discretion in questioning witnesses is not unlimited. MRE 614(b); *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006). "If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed." *Conley*, 270 Mich App at 308 (citation and quotation omitted). In determining whether the trial court's comments pierced the veil of judicial impartiality, we consider "whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *Id.* (citation and quotation marks omitted).

## A. STATEMENTS TO THE VICTIMS

After V.R. testified, the trial court instructed her—as it had done with other witnesses because of a sequestration order—not to speak with anyone about her testimony, particularly other witnesses in the case. The court informed her, however, that if she wished to speak "with any treatment provider, a counselor or therapist . . . in regard to this testimony, that's subject to different rules, and you certainly can talk with them." The court also reminded V.R. that her discussions with a counselor were confidential, and asked her if she was currently seeing a counselor. When V.R. responded that she was, the court stated, "[s]o if you wanted to talk with your counselor about today's testimony, that would be okay. I would understand that. But it cannot be talked about with anybody else. Do you understand?" Following M.R.'s testimony, the court had a similar, though less extensive, exchange, informing her that she could not discuss the case with anyone, save for a counselor or therapist.

Defendant argues that the judge's statements improperly showed sympathy towards the victims and indicated that the judge believed their testimony had been truthful. We do not agree. The court's comments were instructive rather than improperly sympathetic in nature. When read in context, it is clear that the court merely informed the victims that it was permissible for them to speak about their testimony to a mental health professional, although it was impermissible for them to speak about it to anyone else for any other purpose. Moreover, we note that the trial court's comments to V.R. about a counselor came *after* defense counsel elicited testimony about V.R. seeing a counselor and making statements to that counselor. Thus, information that V.R. was seeing a counselor was already before the jury. We also note that the victims were relatively young in this case. The trial court's statement to them simply clarified what they could and could not do. Overall, the trial court's comments did not show bias or impartiality, and were not of such a nature as to deprive defendant of his right to a fair trial. See *Conley*, 270 Mich App at 308.

## B. QUESTIONS POSED TO DEFENDANT

Defendant also argues that the court pierced the veil of judicial impartiality when it questioned him about his blackouts during direct examination. At the outset of defendant's testimony, he informed the trial court that English was not his primary language, and that he often had difficulties speaking English. The trial court reassured defendant that any language deficiencies would not be an issue, and that either the court or the attorneys would ask questions to clarify defendant's answers, if necessary. During the course of defendant's testimony, the trial court stepped in to clarify answers defendant gave during direct examination or cross-examination.

Defendant first notes, and takes issue with, a discussion that occurred during his direct examination. Defense counsel asked defendant whether he had ever touched V.R. in a "sexual way." Defendant responded that he "might touch [V.R.] when I have blackouts." Defense counsel attempted to ask defendant whether he had touched V.R. in a sexual manner during his blackouts, but defendant did not respond directly to this question. Rather, defendant indicated that he had tried to "grab something to hold on [to]" during his blackouts to keep himself. The court then interjected as follows:

*Q*. [THE COURT]: Sir, I am confused. How could you know what you hit? You are telling me or the Court, the Jurors, that you blackout and you don't remember anything, but it also sounds like you are saying in answer to counsel's question that you only hit the girls while you are having a seizure.

*A*. [DEFENDANT]: No, no, no. I didn't say that.

*Q*. Sir, what do you remember specifically in terms of touching or not touching the girls?

*A*. I never touched them girls, not even, nothing. I never touched them girls ever, ever. I didn't touch [the victims' aunt]. I didn't touch any of them.

*Q*. And you wouldn't know what you touched if you blacked out, because you don't remember the blackouts, is that a fair statement?

*A*. The only time, one time they, the only time—

*Q*. Sir, listen to my question. Is it a fair statement that you don't know what you did or didn't touch when you blackout because you don't remember your blackouts, is that right?

*A*. Yes.

*Q*. Thank you.

A trial court is permitted to interrogate witnesses. MRE 614(b). As part of this interrogation, the trial court may question witnesses in order to clarify testimony. *People v McDonald*, 303 Mich App 424, 437; 844 NW2d 168 (2013). "However, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *People v Conyers*, 194 Mich App 395, 405; 487 NW2d 787 (1992). In the instant case, the record does not show that the trial court's questions were intimidating, argumentative, or that they otherwise showed partiality. The court did not invade the prosecutor's role or question defendant's credibility. Rather, the court's questions were restricted to the narrow issue of whether defendant was able to recall his actions during his blackouts. It was proper for the court to clarify defendant's testimony, as his answers to defense counsel's questions on this issue were confused and nonresponsive. See *id.* And, we note that the trial court's remarks may have been beneficial to defendant, as the trial court got defendant to respond to the previously unanswered question of whether his touching of V.R. was in a sexual manner; defendant responded in the negative. Left unanswered, such a question could have been very damaging to defendant. The court's questions did not violate defendant's due process rights. See *Conley*, 270 Mich App at 307-308.

Defendant also objects to the court's questions regarding his use of alcohol and prescription drugs, and whether his consumption of either contributed to his blackouts. On cross-examination, the prosecutor inquired into the cause of defendant's blackouts. The prosecutor initially questioned whether alcohol could have caused the blackouts. Defendant, who had not previously made any statements about medication, provided a nonresponsive

answer, as he stated: "No. When I take my medication, I don't drink alcohol. I don't drink alcohol. I drink beer." Later, defendant testified that he did not drink beer every day, but, immediately thereafter, conceded that he drank two or three beers per day. At this point, the trial court interjected, asking defendant whether he had ever mixed alcohol with his medication; defendant answered in a non-responsive manner by stating that he began to take medication while living at a certain residence. The court responded as follows:

> *Q*. My question really revolves around this, were you taking medication and drinking alcohol while you were on that medication?

> *A*. I was taking Vicodins [sic] for my pain, because I got arthritis. . . .

> *Q*. Okay. So when you were taking those, and I am not an expert on medicine, but I have seen a few bottles of Vicodin, and usually Vicodin says do not mix with alcohol?

> *A*. Yes.

> *Q*. Were you mixing it with alcohol? Were you having beer while you were taking the Vicodin?

> *A*. I was—

> *Q*. You are not going to get in trouble with me. I just want to be clear about what you are testifying to.

> *A*. I was getting Vicodins from Cristo Rey Center because I was not 65 years old.

> *Q*. I don't care where you were getting it. My only question was were you taking prescribed medication at the time you are telling us you were also drinking about three beers a day, yes or no?

> *A*. Yes, I was.

> *Q*. Thank you.

Defendant argues that during this exchange the court was "pushing" him in order to challenge his credibility. He characterizes the questioning as "intimidating, argumentative, prejudicial, unfair, [and] partial." Although to some extent the tone of the court's questioning is a subjective determination, we do not agree with defendant that the court's questions were improper. The court's questions clarified defendant's testimony as to whether he had consumed alcohol while taking prescription medication. Far from being intimidating or argumentative, the court assured defendant that he would not "get in trouble" with the court for mixing prescription medication with alcohol, or for the manner in which he had obtained his medication. The court's questions were narrowly focused to clarify defendant's testimony regarding the reason for his blackouts. Up to the point the trial court questioned defendant, his testimony was quite unclear

on this point.  We do not find that the trial court's questioning crossed the line to intimidating, argumentative, prejudicial, unfair, or partial questioning.  See *Conyers*, 194 Mich App at 405.

## C.  COUNSEL'S FAILURE TO OBJECT

Defendant contends that his trial counsel was ineffective for failing to object to the trial court's questions and comments noted above.  However, because we find no error in the trial court's conduct, any objection by defense counsel would have been meritless.  Counsel is not required to make a meritless objection.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL; EVIDENCE OF A SUBSTANTIAL DEFENSE

Defendant argues next that trial counsel was constitutionally ineffective for failing to properly investigate or seek admission of evidence regarding prior allegations of sexual abuse allegedly made by V.R. against another individual.  According to defendant, defense counsel was also ineffective for failing to introduce documentary evidence showing the dates of defendant's prior periods of incarceration.  With regard to the latter, defendant contends that the documentary evidence of his incarceration dates would have refuted the other-acts evidence offered by the victims' mother.

The accused has the right under the federal and state constitutions to the effective assistance of counsel.  US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  To prevail on his ineffective assistance of counsel claim, defendant must show "that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different."  *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).  Defendant must overcome the strong presumption that counsel's decisions were the product of sound trial strategy.  *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

## A.  EVIDENCE OF A PRIOR ACCUSATION OF SEXUAL ASSAULT

Defense counsel attempted to introduce evidence that V.R. had made a prior accusation of sexual assault against another individual through the testimony of the investigating detective in this case.  The detective stated that she was aware of the allegation, but believed that it had been asserted by a worker from Child Protective Services (CPS) rather than by either of the victims.  The CPS worker had not been listed by either party as a witness, and the trial court determined that the allegation was inadmissible hearsay.  The trial court denied defense counsel's request to try to locate the CPS worker and present her as a witness, but allowed counsel to make an offer of proof and attempt to "change [the court's] mind."  Defense counsel never made an offer of proof at trial.  Likewise, he failed to provide an affidavit or any record of the CPS worker's alleged testimony with his appellate brief.

As an initial matter, we reject defendant's claim of ineffective assistance predicated on an alleged failure to produce the CPS worker as a witness because defendant failed to produce any affidavit or offer of proof with regard to the content of her testimony.  He has not established that

-6-

the victim made a prior allegation, let alone that the prior allegation was false. Accordingly, he fails to establish the factual predicate for his claim, and we find it to be without merit. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). He cannot establish that counsel's failure to call the CPS worker deprived him of a substantial defense. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Moreover, even assuming the CPS worker could testify about a prior allegation of sexual abuse committed by the individual on V.R., problems remain with defendant's claim. First, he has not specified whether the prior allegation of abuse was a false allegation. If not a prior false allegation, its admission would likely be barred by MCL 750.520j, the rape-shield law. We do not agree with defendant's assertion that the law does not apply to prior acts against children, see *People v Arenda*, 416 Mich 1, 6, 13; 330 NW2d 814 (1982); *People v Morse*, 231 Mich App 424, 430; 586 NW2d 555 (1998), and defendant has not articulated a reason why the statute would not apply. Moreover, to the extent he alleges on appeal that the prior allegation was false, we again note defendant failed to provide any offer of proof in this regard. False allegations of sexual abuse or sexual assault do not implicate the rape-shield law. *People v Jackson*, 477 Mich 1019, 1019; 726 NW2d 727 (2007); *People v Hackett*, 421 Mich 338, 348-349; 365 NW2d 120 (1984). However, in order to offer evidence of a victim's prior false accusation, the defendant must first make an offer of proof regarding the evidence, including the falsity of the accusation, and demonstrate its relevance. *People v Adamski*, 198 Mich App 133, 142; 497 NW2d 546 (1993); *People v Williams*, 191 Mich App 269, 273; 477 NW2d 877 (1991). Here, defendant never alleged that the prior accusation was false, much less submitted an offer of proof with regard to falsity. As such, defendant cannot demonstrate that the testimony of the CPS worker would have been admissible, or that he was deprived of a substantial defense. See *Adamski*, 198 Mich App at 142. See also *Dixon*, 263 Mich App at 398.[1]

## B. DOCUMENTARY EVIDENCE OF DEFENDANT'S INCARCERATION

We also reject defendant's claim that defense counsel was ineffective for failing to present documentary evidence of defendant's periods of incarceration in order to rebut the other-acts testimony offered by the victims' mother. At trial, and outside the presence of the jury, the prosecutor informed the trial court that defense counsel indicated to her that he had records of defendant's various prison terms. The prosecutor, contending that she had never seen the records before trial, objected to any proposed use of the documents. In response, defense counsel acknowledged that he had information concerning defendant's numerous dates of prior incarceration. Defense counsel stated, however, that he did not have any intention of admitting the documents because he never intended to make defendant's criminal record an issue in the case. He even doubted whether the records were admissible. However, defendant's counsel indicated that his strategy had subsequently changed mid-trial. He noted that, during the victims' mother's testimony on direct examination, she mentioned defendant's prior criminal record,

---

[1] Given that defendant was unable to show that the evidence existed, much less that it was relevant, i.e., it was a prior *false* accusation, we reject his attendant claim that he was denied his right of confrontation. See *Hackett*, 421 Mich at 348-351.

indicating that defendant abused her before and after he was imprisoned.[2]  Because the victims'
mother had mentioned defendant's prior criminal history, defense counsel stated that "the cat's
out of the bag," and opined that he had no choice but to change his strategy and to argue that
defendant's incarceration made it improbable or impossible that he abused the victims' mother.
He assured the prosecutor and the trial court, however, that he would seek to introduce evidence
of defendant's criminal record through defendant's own trial testimony, and would not use the
documents.

On the final day of trial, defendant testified on his own behalf.  He dedicated part of his
testimony to rebutting the other-acts evidence offered by the victims' mother.  This consisted of
him testifying about his extensive criminal history and the times he was allegedly incarcerated.
According to defendant, he was incarcerated in 1974 and was released in April 1977.  He was
then extradited to Texas, where he was incarcerated once again, this time from September 1977
until April 1981.  Thereafter, he moved to Michigan to be with the victims' grandmother and
mother.  He was in Michigan for less than a week before he got into a bar fight that ended in the
death of another man.  Defendant testified that he faced a homicide charge, and pleaded guilty to
second-degree murder.  He testified that he was incarcerated in 1981 as a result, and was released
in 1984 for reasons that are not pertinent to this appeal.  Some of the years of defendant's alleged
incarceration generally lined up with the timeframes during which the victims' mother testified
that the other-acts abuse occurred.

On appeal, defendant argues that defense counsel should have sought admission of
documents that allegedly confirmed the dates of his incarceration.  He argues that defense
counsel "failed to understand" how to admit them.  Defendant further claims that he was
prejudiced by counsel's failure because his incarceration records would have provided
documentary proof which strongly suggested that the victims' mother lied to the jury.  The
alleged documents are not part of the trial court record.  On appeal, we granted defendant's
motion to expand the record to include his incarceration records.  See *People v Orosco*,
unpublished order of the Court of Appeals, entered March 24, 2015 (Docket No. 319523).  We
note, however, that defendant has provided only a portion of the records he claims exist.  He
produced a single document from the Texas Department of Corrections indicating that he was
incarcerated on August 18, 1978, and that he was released on April 13, 1981.

We find no merit in defendant's claim that his trial counsel was ineffective in regard to
the alleged documents.  First, we note that trial counsel's initial strategy of refraining from
mentioning defendant's incarceration as a means of rebutting the other-acts testimony by the
victims' mother was the product of sound trial strategy; thus, there would have been no need to
use the documents at trial.  The victims' mother testified that she was uncertain about any of the
dates on which the abuse occurred, given that it happened long ago and she had subsequently
consumed substantial amounts of alcohol and illegal drugs.  She recalled general times when the

---

[2] Defense counsel noted that he had previously planned on rebutting the victims' testimony and
the victims' mother's testimony by calling the victims' grandmother as a witness.  However, for
reasons that are not pertinent to this appeal, the victims' grandmother was not called as a witness.

abuse occurred during her childhood, but was uncertain of the dates. She testified that she was only certain about dates that occurred after the year "2000 and up," and only with regard to "certain years" in that timeframe. The record reveals that all of the conduct that comprised the other-acts testimony occurred well before 2000. In light of the victims' mother's uncertainty about any of the dates on which the abuse occurred, we find trial counsel's strategy of not wanting to introduce defendant's criminal record—and thus not using the alleged documents—was not objectively unreasonable. See *LeBlanc*, 465 Mich at 578 (employing a strong presumption that counsel's decisions were the product of sound trial strategy). Defendant had an extensive criminal history; that history included serious crimes such as drug offenses and second-degree murder. It was well within the range of professional conduct to adopt a strategy of not introducing such evidence. This is particularly so in light of the fact that the victims' mother testified that she was uncertain about any dates, and only gave general estimations as to when the other-acts evidence occurred. Essentially, the records would have had very little value in rebutting her claims, and would have exposed the jury to defendant's extensive criminal history.

Regardless, any argument about counsel's performance with regard to the documents does not entitle defendant to relief. Defendant has produced only one document for our review: the document showing he was incarcerated in Texas from 1977 until April 1981. As noted above, the victims' mother testified that she was unsure about any of the dates on which the other-acts evidence occurred; she just knew that the acts occurred sometime during her childhood. Given the nature of the victim's uncertainty of the dates that the abuse occurred, and the short period of time stated in the documentary evidence, defendant has not shown that he was deprived of a defense, let alone a substantial defense. See *Dixon*, 263 Mich App at 398. And, to the extent defendant's argument on appeal relies on other alleged records of his incarceration, he has failed to provide such records, thereby failing to satisfy his burden of establishing the factual predicate for his claim. See *Hoag*, 460 Mich at 6. Further, assuming the records exist, their value is overstated by defendant. Given the victim's inability to remember any specific dates on which the other-acts evidence occurred, and that defendant has not alleged that he was incarcerated for the entirety of the victims' mother's childhood, the incarceration records would not have provided, as defendant contends an "alibi" for the other-acts evidence.

## IV. OTHER-ACTS EVIDENCE

Next, defendant argues that the trial court improperly admitted the other-acts testimony of the victims' mother. Although defendant acknowledges that propensity evidence is admissible in cases involving a sexual offense against a minor under MCL 768.27a, he argues that this testimony was more prejudicial than probative and was not admissible under MRE 403. Defendant further argues that the trial court committed plain error by failing to analyze the evidence pursuant to the factors set forth in *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012), or pursuant to any other form of MRE 403 analysis. We disagree, and find that the court did not abuse its discretion by admitting the evidence.

MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." However, evidence that falls under the purview of the statute may still be

excluded under MRE 403.  See *Watkins*, 491 Mich at 481.  MRE 403 only warrants exclusion of evidence that is *unfairly prejudicial*, meaning that the evidence has "an undue tendency to move [the finder of fact] to decide on an improper basis, commonly, though not always, an emotional one."  *People v Uribe*, __ Mich App __; __ NW2d __ (Docket No. 321012, issued May 12, 2015), slip op 10 (citation and quotation omitted).  Other-acts evidence may not be excluded under MCL 768.27a because it would allow a jury to make a propensity inference.  *Id.* at 10. Likewise, evidence should not be excluded under MRE 403 simply because it portrays depraved or loathsome acts.  *Id.*

In *Watkins*, 491 Mich at 487-488, the Court listed "several considerations that may lead a court to exclude" other-acts evidence under MRE 403, including:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.  This list of considerations is meant to be illustrative rather than exhaustive.

At the hearing on defendant's motion to suppress, the trial court heard argument on several of the factors, and stated that it agreed with the prosecutor's analysis of the factors.

We agree with the trial court that the other-acts evidence was admissible.  The other-acts evidence was highly probative in this case.  The evidence concerned sexual abuse perpetrated against a minor who lived in defendant's household and who was approximately the same age as the victims in the instant case at the time the abuse began.  The abuse shared very similar features with regard to all victims as well.  Notably, at the early stages of the abuse, defendant approached the victims while they were asleep and made unwanted sexual contact with them. That the abuse later escalated against the victims' mother, after several years, does not convince us that the acts were too dissimilar.  We are similarly not persuaded by defendant's arguments regarding a lack of temporal proximity between the other-acts evidence and the charged acts.  As defendant asserts, the approximately thirty year time period between the final incident comprising the "other acts" evidence and the trial date is lengthy, but lack of temporal proximity is not a bar to the admission of this type of evidence.  In *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011), we held that "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility."  Also, given the similarity between the acts—at least with regard to how the abuse started against the victims' mother—we do not find the lack of temporal proximity fatal in this case.  See *id.*  Lastly, we are not persuaded by defendant's argument that the other-acts evidence should have been excluded because it did not result in a conviction.  MCL 768.27a expressly permits the introduction of other-acts evidence that did not result in a conviction.  See *Watkins*, 491 Mich at 489.  The trial court did not abuse its discretion when it admitted the evidence.

## V.  PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor made improper statements during closing argument in an attempt to elicit sympathy for the victims and to inflame the jurors' passions against him by

making "generalizations about child molesters." "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). The prosecutor's comments are evaluated in light of the evidence and defense arguments, and "[o]therwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *Id.* Because defendant did not preserve his claims, reversal is warranted only if an objection could not have cured the alleged error. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant also alleges that his trial counsel was ineffective for failing to object to the prosecutor's comments. We previously denied defendant's motion to remand on this issue, and our review of his ineffective assistance of counsel claim is limited to the facts contained in the record. See *Horn*, 279 Mich App at 38.

During closing argument, defense counsel argued that his task was difficult because in "these sorts of cases . . . all it takes is that accusation. Children are inherently believable. Young people aren't going to lie about such a thing. Of course it's truthful. They're young people, and they're crying." Defense counsel also asserted that "[i]n cases like these they often don't even report the incidents for years. . . . If they report these things early, well, then maybe there's some fact that disproves the case." Defense counsel stated that this case could have involved the "perfect accusation" because people are inclined to believe children, and because there was no evidence of the abuse, aside from the victims' testimony.

During rebuttal, the prosecutor noted that defense counsel referred to a "perfect accusation," then asked "[i]s this the perfect accusation or the perfect crime?" She continued:

> Because crimes like this don't happen in front of video cameras. Crimes like this are committed by cowards who approach children in the night, children who are dependent on them, and children who have nothing to prove that it happened except their words. So with all due respect to [defense counsel] saying this is the perfect accusation, this is, in fact the perfect crime. Because when people who do this pick their targets, they're picking people who are vulnerable and people who have so much to lose if no one believes them.

The prosecutor's comments referring to perpetrators of sexual crimes in general terms were an appropriate response to defense counsel's argument referencing minor victims of sexual crimes in general terms. In the context of defense counsel's argument, the prosecutor's comments were not improper. *Dobek*, 274 Mich App at 64. In addition, we reject defendant's assertion that the prosecutor asked jurors to sympathize with the victims. Rather, the prosecutor simply referenced the facts of the case—that defendant approached the victims at night, while they were sleeping—in making her argument. She was not required to make her argument in the blandest possible terms. See *id.* at 67.

Defendant also argues that the prosecutor's comment during her rebuttal argument—that V.R. was "entitled" to have engaged in "bad things" as a teenager because of the abuse she had endured—was an improper attempt to elicit sympathy for V.R. He also takes issue with comments the prosecutor made concerning the lack of an alleged motivation by V.R. and M.R. to lie. However, these arguments were clearly a response to defense counsel's statements in closing when he suggested that V.R. had lied during her testimony. During his closing argument,

defense counsel stated, "[V.R.] was admittedly angry. She was into drugs. She was hanging out with the wrong people. She testified throughout that she didn't really like living in her grandma's house." Defense counsel further commented that V.R. "wasn't happy with her TV. She wasn't happy with her phone. . . . If it benefitted her in any way, shape, or form as a teenager who was angry to say something to get herself out of the house or to get something she wanted, that's how this starts."

In context, the prosecutor merely responded to defendant's arguments. Her claim that the victim was entitled to have engaged in unsavory activities was clearly a response to defense counsel's claim that the victim was not worthy of belief because of those same activities. Further, the prosecutor responded to defense counsel's assertions about V.R. being an "angry" teenager rather than a victim by asking the jury to consider whether it was probable that the victims had fabricated their allegations for personal gain: "Ask yourself what the payoff is for those girls? The payoff is that they know they have the truth on their side and the evidence has supported that." We find no impropriety in these comments when reviewed in context.

Defendant next argues that the prosecutor denigrated him by arguing that his testimony was not worthy of belief. After summarizing some of defendant's testimony, the prosecutor stated, during rebuttal argument:

> And I ask you, are you comfortable believing the words of a man who has molested three children? If he has touched any of those ladies, his moral compass isn't exactly pointing up. Do you think he would come in here and think twice about lying to 12 strangers?

A prosecutor is permitted to "argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Here, the prosecutor's argument came in the context of summarizing the facts of the case, and arguing that, based on those facts, defendant was not worthy of belief. This was not improper. See *id.* To the extent the comments may have crossed the line, any prejudice to defendant could have been cured by a timely objection. See *Unger*, 278 Mich App at 234-235.

Defendant also contends that the prosecutor made an improper civic duty argument and unfairly appealed to the sympathy of the jury. He notes that during closing argument, the prosecutor stated that:

> The power has shifted in this case. The power has shifted from two little girls who didn't have a mom in their house to protect them, to coming into a courtroom, giving their testimony, and asking 12 strangers who never met them between, [sic] before this week, to make a decision. When parents fail, when grownups fail, the justice system does not. And I know this week has been long, and we appreciate your patience, but I hope you see after listening to the testimony of the People in this case that this is why this is so important. Because when you have no voice, this is the voice. So we ask you to come back and return a verdict of guilty on every single one of these counts.

Later, during rebuttal, the prosecutor—who had stated from the beginning of opening statements that this case was about "mothers and daughters and survivors"— argued that:

> This case is about mothers and daughters and survivors. The mothers who fails us, the mothers who may fail us initially but come back later and do what a mom needs to do. . . . The daughters who put their faith in each other and in their aunts and in their moms to do the right thing. The evidence sits in those four chairs that are sitting in the audience right there. And they've poured their lives out in front of you, and we ask you based on the details and the evidence and your gut reaction because what you believe is the facts. And if the facts that you believe prove this case beyond a reasonable doubt, then that is a conviction.

We do not agree with defendant's assertion of error. Again, the prosecutor is not required to make her argument in the blandest of possible terms. See *Dobek*, 274 Mich App at 67. Considering the prosecutor's remarks as a whole, the prosecutor did not ask the jury to convict out of a sense of civic duty or sympathy, but instead asked the jury to convict based on the evidence. And, regarding the argument in this case about how the "power" had shifted, we note that much was made during trial—by both sides—about how the victims were afraid to disclose the abuse because they did not feel supported by the adults in their lives. Moreover, even if the prosecutor's comments were improper, the trial court instructed the jury that the comments of the prosecutor were not evidence. Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Because we find that none of the prosecutor's comments warranted an objection, we reject defendant's attendant claim of ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201 (counsel is not required to make meritless objections).

## VI. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of the alleged errors denied him a fair trial. While this Court has held that the cumulative effect of a number of minor errors may in some cases amount to error requiring reversal, as we discussed above, there was no error; moreover, any error or arguable error in the instant case had little if any effect on the outcome of the case. Thus, we find that defendant is not entitled to reversal on this basis. See *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999).

Affirmed.

/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering