PEOPLE v JACKSON

Docket No. 78-930. Submitted February 5, 1980, at Detroit.—Decided June 2, 1980.

Anthony R. Jackson was convicted by a jury of second-degree murder, armed robbery and assault with intent to murder. During his trial in the Recorder's Court of Detroit, Judge George W. Crockett, III, extensively questioned the defendant when defendant took the stand in his own defense. The nature and extent of the questioning was such that the jury could have perceived that the trial judge disbelieved the defendant's testimony and, from that, inferred judicial support of the testimony of the prosecution witnesses, chief among those witnesses being defendant's accomplices. No cautionary instruction regarding the scrutiny to be given accomplice testimony was requested and no such instruction was given. Defendant appeals. *Held:*

1. The trial judge had the duty to avoid any invasion of the prosecutor's role and the duty to exercise caution with respect to any questioning of the witnesses so that the jury would not be able to infer from that questioning that the judge believed or disbelieved the testimony of any given witness. Since the trial judge failed to exercise such caution, but instead engaged in extensive questioning of the defendant that could cause the jury to believe that the judge disbelieved the defendant's testimony and, by implication, that the judge believed the testimony of the prosecution's witnesses, the defendant was denied a fair and impartial trial.

2. The trial court should have *sua sponte* instructed the jury as to the caution with which accomplice testimony should be viewed. While there was no request for such an instruction, where, as here, the issue of guilt or innocence is closely drawn, such an instruction should be given even in the absence of a request to charge.

3. While on retrial care should be taken to avoid any ambigu-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 75 Am Jur 2d, Trial § 88.
[3] 75 Am Jur 2d, Trial §§ 690, 818 *et seq.*
   Propriety of specific jury instructions as to credibility of accomplices. 4 ALR3d 351.
[4] 75 Am Jur 2d, Trial § 613 *et seq.*

ity as to whether the jury can find defendant not guilty of second-degree murder, the ambiguity in the charge as given to the jury can be resolved when the jury instructions are read as a whole.

Reversed and remanded.

1. CRIMINAL LAW — TRIAL — EXAMINATION OF WITNESSES — IMPARTIALITY OF TRIAL JUDGE.

A trial judge in a criminal jury trial should avoid any invasion of the prosecutor's role and should exercise caution so that any questions asked of witnesses by him will not be viewed as being intimidating, argumentative, prejudicial, unfair or partial.

2. CRIMINAL LAW — TRIAL — FAIR TRIAL — EXAMINATION OF WITNESSES — JURY — PERCEIVED PARTIALITY OF TRIAL JUDGE.

A criminal defendant is denied a fair and impartial trial where, in a jury trial, the trial judge engages in examination of the defendant in such a manner and to such an extent that the jury could have perceived judicial rejection of the defendant's credibility and inferred judicial support of the testimony of the prosecution witnesses.

3. CRIMINAL LAW — INSTRUCTIONS TO JURY — ACCOMPLICE TESTIMONY — CAUTIONARY INSTRUCTIONS — REQUEST TO CHARGE — SUA SPONTE INSTRUCTIONS.

A cautionary instruction regarding accomplice testimony must be given not only when there is a request to charge but also must be given *sua sponte* if the issue of guilt or innocence is closely drawn.

4. TRIAL — INSTRUCTIONS TO JURY — AMBIGUOUS INSTRUCTIONS — CHARGE AS A WHOLE.

An ambiguous instruction to the jury will not mandate reversal where the charge to the jury, read as a whole, resolves the ambiguity.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Robert E. Edick,* Assistant Prosecuting Attorney, for the people.

*Maxwell & Sniderman (Howard Hertz,* of counsel), for defendant.

Before: N. J. KAUFMAN, P.J., and D. E. HOL-
BROOK, JR. and R. M. MAHER, JJ.

D. E. HOLBROOK, JR., J. Defendant was convicted
by a jury of second-degree murder, MCL 750.317;
MSA 28.549, armed robbery, MCL 750.529; MSA
28.797, and assault with intent to kill and murder,
MCL 750.83; MSA 28.278. Thereafter sentenced to
concurrent prison terms of 25 to 40 years, life
imprisonment, and 20 to 40 years, respectively, he
appeals as of right.

Defendant and two friends went to a notorious
"dope den". Defendant entered the apartment
alone with the intention of getting the occupant's
gun. After obtaining the gun, defendant opened
the apartment door. His friends came in and there
was shooting. Two men from the apartment were
wounded and one was killed.

At trial defendant's two friends obtained pleas
to lesser charges in return for their testimony.
There were conflicting stories as to whether defen-
dant or his friends did the shooting.

Defendant claims that the trial court questioned
him at length in such a way as to discredit his
testimony in the jury's minds. We agree. Where
there is a jury, the judge should avoid any inva-
sion of the prosecutor's role and exercise caution
so that his questions will not be intimidating,
argumentative, prejudicial, unfair or partial. *Peo-
ple v Cole,* 349 Mich 175, 199; 84 NW2d 711 (1957).

The judge pursued an intimidating and argu-
mentative line of questioning. By injecting into the
trial his skepticism of defendant's testimony, he
exceeded the bounds of impartiality. For example,
he challenged defendant's testimony concerning
defendant's tricking the decedent out of his gun:

"THE COURT: Did you think that you could have gotten Mr. Jackson's weapon from him voluntarily?

"THE WITNESS: Voluntarily?

"THE COURT: Yes.

"THE WITNESS: I did.

"THE COURT: You said you went there to borrow the weapon, right?

"THE WITNESS: Oh, yes, sir.

"THE COURT: Did you realistically think that he would loan you his weapon?

"THE WITNESS: Yes, sir.

"THE COURT: And was he running a dope pad?

"THE WITNESS: Yes.

"THE COURT: How long have you been familiar with dope pads?

"THE WITNESS: Oh, since I was 16.

"THE COURT: How old are you now?

"THE WITNESS: 24.

"THE COURT: You realistically thought Mr. Jackson would loan you his weapon which he was using to protect his dope pad?

"THE WITNESS: Yes, sir."

Such judicial questioning did not serve the purpose of producing fuller testimony or of clarifying points as sanctioned under *Simpson v Burton,* 328 Mich 557, 564; 44 NW2d 178 (1950).

Defendant testified that one of the accomplices, Melvin Daniels, gave him a gun prior to entering the apartment. He stated that he went into the apartment for the sole purpose of borrowing decedent's gun and that he had no prior knowledge of the events which took place. He also said that he did not participate in the robberies or shootings. He obtained decedent's gun and was leaving the apartment when he was surprised by Daniels and McKinney, the other accomplice. The trial judge questioned defendant regarding the alleged surprise:

"THE COURT: Mr. Jackson, how tall were you on January 3, 1977?

"THE WITNESS: I am about five ten, five eleven.

"THE COURT: And how much did you weigh then?

"THE WITNESS: Same as I do now.

"THE COURT: What is that?

"THE WITNESS: 180. I am sure.

"THE COURT: Is Mr. Daniels as tall or as heavy as you?

"THE WITNESS: He is not as tall, but about as heavy as me.

"THE COURT: Is Mr. McKinney as tall or heavy as you?

"THE WITNESS: I am not sure. I don't know Mr. McKinney.

"THE COURT: You don't know him?

"THE WITNESS: The first I seen him was the day this happened.

"THE COURT: You saw him the other day, didn't you?

"THE WITNESS: Yes, sir.

"THE COURT: And at the time you became frightened, either Mr. Daniels or Mr. McKinney or both, and you had two weapons, one of which was loaded?

"THE WITNESS: Yes, sir.

"THE COURT: You were armed and bigger than either of those individuals, is that right?

"THE WITNESS: I was armed and taller, but I would like to express myself.

"THE COURT: Feel free to.

"THE WITNESS: Okay. I have never been in places— placed in a position like that before, and opening the door and seeing them and the expression on their face was something that I can't describe.

"THE COURT: Anything further, counsel?

"MR. HOGG: I have some further questions based on the Court's examination."

Such an interrogation indicates skepticism or incredulousness on the part of the judge. It could

have influenced the jury to the detriment of defendant's case. *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972). Defendant's version of the facts, that he was frightened and surprised, was impeached by the trial court's suggestion that defendant had a physical advantage over both Daniels and McKinney.

A prosecution witness testified to seeing two men run to a car. He then heard more gun shots from within the building and saw a third man in a blue parka run from the building and enter the car. Defendant testified that he was one of the first two men to enter the car. The trial court questioned defendant:

"THE COURT: Were you wearing a blue parka similar to the one that is on evidence here?

"THE WITNESS: That's correct.

"THE COURT: Were you the last person to get in the car?

"THE WITNESS: No, sir.

"THE COURT: Did you hear that young man testify and say he was on his porch and he heard shots?

"THE WITNESS: Yes, sir.

"THE COURT: That he saw two people come out with one wearing a tan coat or a beige coat and another one who he couldn't describe, and they went and got straight into the car?

"THE WITNESS: Yes, I remember.

"THE COURT: And then after hearing the shots he saw somebody come out who hesitated, looked around and then got into the car?

"THE WITNESS: That's what he said.

"THE COURT: Did you know him?

"THE WITNESS: No.

"THE COURT: Have you ever seen him before in your life?

"THE WITNESS: In the neighborhood.

"THE COURT: Had you ever done anything to him?

"THE WITNESS: No."

The trial court improperly assumed a prosecutorial role. The above colloquy rejected defendant's credibility and implied judicial support of the prosecution witness's testimony. Such partiality quite possibly could have influenced the jury to the detriment of defendant's case. *People v Roby, supra.*

In order to escape prejudicial error under *People v Piscunere,* 26 Mich App 52; 181 NW2d 782 (1970), the questioning and comments by the trial judge must be limited in scope, material to the issue, and must not communicate to the jury any opinion that the trial judge may have regarding these matters. We have no other recourse but to find that defendant was denied a fair and impartial trial despite the evidence presented. *People v Smith,* 363 Mich 157; 108 NW2d 751 (1961).

Defendant also contends that the trial judge committed reversible error in failing to give a cautionary instruction regarding accomplice testimony. No such instruction was requested, but it has been held in *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974), that it may be reversible error to fail to give such a cautionary instruction even in the absence of a request to charge when the issue is "closely drawn". We find that the issue of guilt or innocence was closely drawn in the instant case. Since there were no eyewitnesses to the actual shooting, the question came down to whom to believe, the defendant or the accomplices. Moreover, the trial judge, through his questioning of defendant, cast a cloud of judicial skepticism over defendant's testimony. Under these circumstances, the trial court should have *sua sponte* given the jury a cautionary instruction

as to the weight and credibility which should be accorded to the testimony of the accomplices, particularly here where one of the accomplices, McKinney, admitted that he would like to help either himself or his friend, Daniels, the other accomplice. A cautionary instruction as to accomplice testimony would have acted as a safeguard for the defendant:

" 'Testimony of an accomplice has been held to be fraught with weakness due to the effect of fear, threats, hostility, motives, or hope of leniency. The consideration of the infirmities of this kind of testimony goes to the credibility of the evidence, and the law requires that such testimony be closely scrutinized and accepted with caution. * * * It has been said that a skeptical approach to accomplice testimony is a mark of the fair administration of justice.' " *People v Love,* 43 Mich App 608, 611; 204 NW2d 714 (1972).

Defendant also contends that the trial court never clearly told the jury that it could find defendant not guilty of second-degree murder. At the close of his final charge to the jury, the judge summarized the possible verdicts as to Count I, the first-degree felony murder count, as follows:

"Your possible verdicts are as to Count I, not guilty or guilty of murder in the first degree or guilty of murder in the second degree."

While we wish that the trial judge had been clearer in his instruction, we find that the above ambiguity is resolved when the final charge is read as a whole. The jury was also instructed that, "If you find the defendant guilty of murder, it is your duty to state in your verdict whether he is guilty of murder in the first degree or guilty of the lesser offense of murder in the second degree." This

instruction indicated to the jury that they were to decide first whether defendant was guilty of murder; if they so found, then it was necessary to decide what degree. Moreover, general instructions as to the burden of proof and reasonable doubt underscored the option of a not guilty verdict. We do hope, however, that the trial court will be more clear in the future.

As to defendant's remaining allegations of error, we find them to be without merit.

Reversed and remanded.