*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCIA ANN BRILINSKI,

Defendant-Appellant.

UNPUBLISHED
April 15, 2021

Nos. 352124; 352126
Alcona Circuit Court
LC Nos. 19-003208-FH; 19-
003209-FH

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant appeals as of right her jury-trial convictions of two counts of resisting and obstructing a police officer, MCL 750.81d(1), and one count of public intoxication and being a disorderly person, MCL 750.167(1)(e). We affirm.

## I. BACKGROUND

These cases arise from defendant's conduct while patronizing the Mountain Inn Bar and Grill. Defendant was drinking a beer at the bar, seated next to Eric Protiva. Protiva testified that defendant was complaining about a worker at the bar who was causing her daughter problems at school. Protiva said that defendant was angry, using expletives and getting louder. Multiple witnesses testified that defendant was calling workers "bitches" and other vulgarities and that everyone at the bar could hear her. One of the workers eventually obtained permission from the manager to ask defendant to leave. Defendant initially complied and Mountain Inn's part-owner James Derocher spoke to her in the parking lot. Derocher testified that he told defendant that she needed to leave or the police would be called and that he offered her a ride home. Defendant eventually went back into the bar and was asked to leave again. This time the manager, Carol Butler, went outside to speak with defendant in the parking lot. Carol explained to defendant that her behavior toward the staff was unacceptable and that she needed to leave. Carol's son, David

---

[1] *People v Brilinksi*, unpublished order of the Court of Appeals, entered February 11, 2020 (Docket Nos. 352124; 352126).

Butler, accompanied his mother and testified that he became involved when defendant stepped toward his mother, clenched her fists, "and started angrily getting loud." When defendant refused to leave, David called the police and asked his mother to go back inside.

Michigan State Police Trooper Justin Strong was dispatched to the scene. Strong testified that when he arrived defendant approach him and that she smelled of alcohol and had watery eyes and slurred speech. Strong instructed defendant to stay by her vehicle while he spoke with David, but defendant approached and tried to speak over the officer's interview. Strong testified that when he began speaking with defendant he did not intend to arrest her and was trying to find a way for her to peacefully leave the premises. Defendant declined to undergo a "breath test," so Strong could not allow her to drive given her condition. Defendant called her daughter, but received no answer.

Strong testified that defendant became "increasingly more agitated," and was yelling. Strong eventually decided to arrest and handcuffed defendant, but she declined to enter his patrol car, calling him an expletive. At some point, two Alcona County Sheriff Deputies arrive. One of the deputies offered to transport defendant in his vehicle, which had a "cage partition" separating the front and back seats. Deputy Robert Clink rode in the backseat with defendant because the two front seats were taken. Clink testified that at one point defendant attempted to slip off her handcuffs, and also grabbed the door handle. Clink believed defendant was trying to escape the moving vehicle and held defendant by her handcuffs. Clink testified that defendant then kicked him about three or four times. Once at the county jail, defendant initially refused to get out of the vehicle. Defendant was charged with resisting and obstructing Strong and Clink.

Over the course of a two-day trial, the jury heard testimony by individuals who were present in the bar, the bar's employees, and the responding law enforcement officers. Several audio and video files were admitted into evidence and played for the jury. Defendant testified in her own defense.

## II.    SUFFICIENCY OF THE EVIDENCE

Defendant first argues that insufficient evidence was presented to support the jury's guilty verdicts. We disagree.[2]

The elements of resisting or obstructing a police officer require the prosecution to prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer

---

[2] We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016). The evidence is reviewed in a light most favorable to the prosecution to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. *Id.* "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citation omitted).

performing his or her duties." *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted). "In addition, 'the prosecution must establish that the officers' actions were lawful.' " *Id.*, quoting *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012)*. Thus, "the lawfulness of the arrest was an element of the offense, and it presented a factual question for the jury." *Vandenberg*, 307 Mich App at 68-69.

> Defendant argues that the prosecution failed to prove that she was lawfully arrested.

> For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense. [*Id.* at 69. See also MCL 764.15.]

In this case, the trial court instructed the jury that "[a] warrantless arrest is legal if the police officer had enough information to lead an ordinarily careful person to believe that the defendant committed a crime and an offense was committed in the peace officer's presence." This instruction accurately defines "reasonable cause," see *People v Freeman*, 240 Mich App 235, 236; 612 NW2d 824 (2000), and is consistent with MCL 764.15(1)(a), which provides that an officer may arrest a person without a warrant if "[a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence."

However, the instruction did not inform the jury that a warrantless arrest is lawful if the officer had reasonable cause "to believe a misdemeanor punishable by imprisonment for more than 92 days or a felony has been committed and reasonable cause to believe the person committed it." MCL 764.15(1)(d). Presumably, this instruction was not given because it would have required the jury to consider the punishment of defendant's crimes. In any event, defendant did not object to the jury not being instructed on MCL 764.15(1)(d), and she does not properly raise that challenge on appeal.[3] Nonetheless, defendant's argument focuses on MCL 764.15(1)(d). That is, she argues that her arrest was unlawful because Strong told her that she was being arrested for "drunk and disorderly," i.e., MCL 750.167(1)(e), which is only a 90-day misdemeanor. Defendant's argument presumes that the officers did not have reasonable cause to believe that she had violated MCL 750.167(1)(e). More importantly, it wholly ignores that the question before the jury was merely whether defendant committed *an offense* in the officers' presence.

---

[3] In the section of her brief addressing the trial court's decision to not instruct the jury pursuant to M Crim JI 13.5(5), defendant argues in passing that the lack of an instruction on MCL 764.15(1)(d) was plain error and constitutes ineffective assistance of counsel. We decline to address this cursory argument because it is devoid of any legal citation or elaboration. See *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2011) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.") (quotation marks and citation omitted; alteration by *Watson*).

While Strong told defendant she was being arrested for disorderly conduct, he testified that he could have also arrested her for trespass and disturbing the peace. Defendant argues that trespass and disturbing the peace are post-hoc justifications for the arrest and that the officer must have had reasonable cause *at the time of the arrest* that she had committed one or both of those offenses. However, Strong testified that there may be multiple reasons for arrest, and he generally does not cite each one when arresting the suspect. So, the fact that Strong only cited drunk and disorderly conduct when arresting defendant is not dispositive of what offenses he believed defendant had committed at the time of the arrest.

Further, we conclude that there was sufficient evidence presented for the jury to conclude that defendant was trespassing in Strong's presence.[4] A person commits a criminal trespass when she "[r]emain[s] without lawful authority on the land or premises of another after being notified to depart by the owner or occupant or the agent of the owner or occupant." MCL 750.552(1)(b). There is no dispute that defendant was told multiple times by Mountain Inn's owner, manager and employees that she needed to leave the premises. Her refusal to do so was why the police were called. Strong arrived and learned of the establishment's desire for defendant to leave. Strong then tried to work with defendant to find a way for her to peacefully and safely leave the premises. Defendant made little effort to work with Strong on that matter. Strong testified that defendant eventually made a statement to the effect that she would "stand here all night," indicating that she was not going to leave. This was sufficient evidence for the jury to conclude that Strong had reasonable cause to believe that a trespass was being committed in his presence. The fact that the prosecutor did not charge defendant with trespass does not determine whether the arrest was lawful. Accordingly, there was sufficient evidence for the jury to conclude that the officers were acting lawfully when they arrested defendant, and therefore that defendant did not have the right to resist the arrest. See *Moreno*, 491 Mich at 51-52.

Defendant also argues that there was insufficient evidence to support her conviction for public intoxication and being a disorderly person. MCL 750.167(1)(e) provides:

> A person is a disorderly person if the person is any of the following:
>
> * * *
>
> (e) A person who is intoxicated in a public place and who is either endangering directly the safety of another person or of property or is acting in a manner that causes a public disturbance.[5]

---

[4] We decline to address whether a warrantless arrest would have been valid for disturbing the peace.

[5] Although the Legislature's use of the disjunctive term "or" indicates that there are two alternative ways to commit the crime, see *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011), in *People v Gagnon*, 129 Mich App 678, 683-684; 341 NW2d 867 (1983), this Court held that MCL 750.167(1)(e) was void for vagueness for not providing any standard for determining what constitutes a public disturbance. To remedy this deficiency, we held that "the public disturbance provision of the disorderly person statute . . . require[s] a finding that an accused, while

-4-

Defendant does not dispute that she was intoxicated in a public place. Instead, she maintains that she did not directly endanger the safety of another person or property. This argument is unavailing. Several individuals observed defendant yell at the bar's staff, using profanities. Protiva testified that defendant was angry, was using derogatory terms like "bitch" and was "getting louder as she went on." He also testified that while defendant was not explicitly threatening to hurt anyone, she was "aggressive" and "confrontational with the staff there." And while one of the employees, Kelsey Fowler, testified that she did not feel her safety was threatened by defendant, she answered affirmatively when ask whether she felt that anyone else's safety was in question. Further, David Butler, the son of Mountain Inn's manager, testified that he became involved when defendant stepped toward his mother with clenched her fists, "and started angrily getting loud." He asked his mother to go back inside while he called the police. Moreover, the testimony and video established that defendant was becoming increasingly agitated, swearing and yelling at the officers, using vulgar language, and refusing to follow the officers' commands. From this, a rational trier of fact could conclude that defendant's erratic behavior directly endangered the safety of people or property and caused a public disturbance. MCL 750.167(1)(e).

### III. JURY INSTRUCTIONS

Defendant next argues that the trial court erred by not instructing the jury in accordance with M Crim JI 13.5(5) that the prosecution had the burden of proving beyond a reasonable doubt that the officers' actions were lawful. Viewing the jury instructions as a whole, we conclude that the omission of this instruction does not warrant reversal.[6]

A trial judge must instruct the jury as to the applicable law. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). The instructions must include all of the elements of the crime charged and any material issues, defenses, and theories for which there is evidence in support. *Id*. No error results from the omission of an instruction if the instructions as a whole covered the substance of the omitted instruction. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011).

The jury was instructed on the elements of resisting and obstructing in accordance with M Crim JI 13.1,[7] including that the prosecution had the burden of proving that the officer "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." The use notes to that instruction state that the court "should provide detailed legal instructions regarding the applicable law governing the officer's legal authority to act." Accordingly, the court

---

intoxicated, directly endangered the safety of another person or of property as requisite to a finding of guilty of causing a public disturbance while intoxicated." *Id*. at 684.

[6] Claims of instructional error that involve questions of law are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006).

[7] A court must instruct the jury using the Michigan Model Criminal Jury Instructions if "(a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." MCR 2.512(D)(2); *People v Rosa*, 322 Mich App 726, 739; 913 NW2d 392 (2018).

instructed the jury pursuant to M Crim JI 13.5(2) on when an officer can make a warrantless arrest.[8] However, the trial court denied defendant's request that the jury be instructed pursuant to M Crim JI 13.5(5) that "the prosecutor must prove beyond a reasonable doubt that the arrest was legal, that the officer was acting within his or her legal authority. It is up to you to determine whether the officers' actions were legal according to the law as I have just described it to you." The trial court declined to give this instruction because it concluded that it was duplicative to the instruction it gave regarding the prosecution's burden to prove the elements of resisting and obstruction.

Defendant argues that was erroneous because the instructions provided were insufficient to inform the jury of her defense that the officers violated MCL 764.15(1)(d) by arresting without a warrant for a 90-day misdemeanor. As discussed, the pertinent question in this case was whether defendant committed an offense in the officers' presence, not whether the officers had reasonable cause to believe that defendant committed a 93-day misdemeanor outside of their presence. Further, M Crim JI 13.5(5) would not have provided any additional instruction on the officer's authority to act, and so its omission did not prejudice defendant's defense. Rather, M Crim JI 13.5(5) would have merely reiterated to the jury it was tasked with determining whether the prosecutor proved beyond a reasonable doubt that the arrest was lawful. Accordingly, the trial court did not err by declining to give M Crim JI 13.5(5) on the grounds that it was duplicative to the model instruction on resisting and obstructing.

That said, we agree with defendant that the instruction explaining what constitutes a lawful arrest should have immediately followed the instruction on the third element of resisting and obstructing, i.e., that the prosecutor must prove that the officer's actions were lawful. Instead, that instruction was given after the court recited the elements of all the charges, including public intoxication and disorderly person. However, defendant fails to show that the instructional error resulted in a miscarriage of justice. See MCL 769.26 ("No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury . . . unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice."). In closing argument, both the prosecution and the defense focused on whether the arrest was lawful and how that determination turned on whether an offense was committed in the officers' presence. We therefore see no grounds to conclude that the jury did not understand the standard it was to apply in determining whether the officers acted lawfully. And, as discussed, there was ample evidence to uphold the jury's finding that the arrest was lawful. Accordingly, defendant is not entitled to a new trial for instructional error.

## IV.    JUDICIAL MISCONDUCT

Defendant next argues that she was deprived of a fair trial because the judge made improper comments and questions that indicated a bias against her. Specifically, defendant argues that the trial court's interruption of defense counsel's opening and closing statements, repeated

---

[8] M Crim JI 13.5(2) provides that "[a]n arrest is legal if it is made [describe circumstances for a warrantless arrest found in MCL 764.15, 764.15a, 764.15b, 764.15e, 769.15f]." (Emphasis removed).

interruptions of defendant's testimony, and questioning of one of the witnesses pierced the veil of impartiality. This argument is not supported by the record.[9]

To determine whether the trial judge's conduct deprived defendant of a fair trial, we consider whether the "trial judge's conduct pierce[d] the veil of judicial impartiality." *People v Stevens,* 498 Mich 162, 170; 869 NW2d 233 (2015). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.* at 171. Whether the trial court pierced the veil of judicial impartiality is a "fact-specific analysis" that must be determined by considering the totality of the circumstances. *Id*. at 171-172. In determining whether a trial judge pierced the veil of judicial impartiality, this Court considers several factors:

> The reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id*. at 172.]

Forms of judicial misconduct may include, but are not limited to, "belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Id*. at 172-173.

Defendant first argues that trial judge pierced the veil of impartiality when she interrupted defense counsel's opening statement and closing arguments. "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." MCL 768.29. In his opening statement, after noting that there is an exception to the warrant requirement when the officer has reasonable cause to believe that a crime has been committed outside of their presence if the maximum penalty is at least 93 days, defense counsel stated that "[d]isorderly person which [defendant] is charged with and is only, the maximum penalty is—," when the trial judge interjected. The judge stated, "We're not going to talk about penalty," and reminded counsel of the standard jury instruction that the penalty of the charged crime should have no bearing on the jury's deliberations. Thus, the judge's statement during defense counsel's opening statement was a proper response to counsel's argument referencing the potential punishment for a crime defendant was charged with. Likewise,

---

[9] Whether judicial misconduct denied a defendant a fair trial is a question of constitutional law that is reviewed de novo. *People v Stevens,* 498 Mich 162, 168; 869 NW2d 233 (2015). However, in this case, defendant failed to raise the issue before the trial court. The standard of review for an unpreserved issue is plain error affecting the defendant's substantial rights. *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015). To demonstrate plain error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights." *Carines*, 460 Mich at 763. Plain error "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

the judge's interruption during defendant's closing arguments was a proper response to the prosecutor's objection to defense counsel's repeated use of the terms "I believe" or "I think." Defense counsel acknowledged the issue and agreed not to use such language. Thereafter, whenever he used this language, the trial court simply reminded him to be careful with his language. Therefore, when viewed in context, the trial judge's statement did not express bias against defendant but rather comported with the requirements of MCL 768.29 by limiting counsel's arguments and statements to relevant matters.

Next, defendant focuses on the trial judge's interruptions during her own testimony. "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a). Near the beginning of her testimony, the trial judge interrupted defendant, who was essentially testifying in narrative form, and asked defense counsel to ensure he was asking questions in "answer format rather than just some kind of run on." Thereafter, defendant repeatedly testified beyond the scope of the questions she was asked and began testifying before the question was finished. The judge instructed defendant multiple times that she had answered the question posed by her counsel and to wait for the question to finish before giving her answer. These directions were within the judge's duty to control presentation of the evidence and were not of such a nature as to improperly influence the jury. The transcript does not indicate that the judge was disrespectful when giving these directions to defendant. And while defendant relies on statements made by the judge at sentencing, these comments could not have improperly influenced the jury.

Lastly, defendant takes issue with the trial court's questioning of Fowler. "The court may interrogate witnesses, whether called by itself or by a party." MRE 614. "[T]he central object of judicial questioning should be to clarify." *Stevens*, 498 Mich at 173. "[T]he questioning and comments by the trial judge must be limited in scope, material to the issue, and must not communicate to the jury any opinion that the trial judge may have regarding these matters." *People v Jackson*, 97 Mich App 660, 666; 296 NW2d 135 (1980).

Fowler, one of the waitresses working on the night in question, was asked on cross-examination if she felt her safety was threatened by defendant and she answered, "Not my safety, no." After the prosecutor declined redirect examination, the judge sought clarification of Fowler's testimony:

> THE COURT: . . . Your answer . . . was you didn't fell that your safety was in question. Did you feel that anybody's safety was in question?

> THE WITNESS: After she went, yeah. I mean, she got, she was getting mean, you known. And I seen—

> THE COURT: Who, who did you feel was in danger?

> THE WITNESS: Well, I seen the way she was acting with the officers, screaming at them and everything and so . . . cause I left, like, when that was all going down. I was leaving right around that point.

THE COURT: So you saw what happened in the parking lot?

THE WITNESS: Yeah.

The judge's questioning was limited in scope to a relevant matter, i.e., whether Fowler felt defendant's conduct was endangering anyone present. It was reasonable for the judge to seek clarification on this issue after Fowler testified that she did not feel that *her* safety was threatened. "[I]t is appropriate for a judge to question witnesses to produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173. And here, the judge did not unduly participate in the examination of the witness and did not indicate an opinion as to the witness's credibility. See *id*.

In sum, the trial judge's comments and questions were proper and were intended to maintain control over the trial. Considering the totality of the circumstances, defendant fails to show that the judge pierced the veil of impartiality.

## V.    MISTRIAL

Lastly, defendant argues that the trial court erred by denying her request for a mistrial when one of the 12 impanel jurors revealed that he had previously seen defendant and no alternate juror was available. We conclude that the trial court's decision to deny a mistrial was not an abuse of discretion.[10]

A criminal defendant has a constitutional right to be tried by an impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). Jurors are presumed to be impartial, and "[t]he burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*. at 550.

In this case, a member of the jury was dismissed early into the case when he reported that he could not be impartial, leaving the panel with only 12 jurors. The court explained that the dismissed juror had previously been before the court for civil litigation that did not go in his favor. After the first witness testified, and a video had been played for the jury, a separate juror reported that he now recognized defendant. The juror explained that the video "triggered" a memory of defendant. When the trial court asked the juror whether he was "able to separate that from what's going to be presented during this trial," the juror responded, "I think it's going to be [a] really hard thing to do and I got to tell you the truth." However, upon further questioning, the juror confirmed that he would be able to decide the case on the basis of the evidence and that he would hold the prosecutor to the burden of proof. Defense counsel objected to juror remaining on the jury and

_____

[10] We review a trial court's decision regarding a motion for mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (quotation marks and citations omitted).

moved for a mistrial on the basis that there were only 11 impartial jurors. The court denied the motion and advised the juror not to discuss any memory of defendant with the remaining members of the jury.

Defendant maintains that the juror was biased against her. As an initial matter, the juror did not express an opinion about whether his memory would be favorable or negative toward defendant.[11] In any event, this Court has previously concluded, in the context of voir dire, that "[a] juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986). Moreover, on appeal defendant has presented no evidence, and there is none in the record, to support a conclusion that the juror was biased against her and influenced the other members of the jury in such a way that it deprived her of a fair trial. Given the substantial evidence presented against defendant, we cannot conclude that she was prejudiced by the juror's participation or denied a fair trial.

Affirmed.


/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh
/s/ James Robert Redford

---

[11] It was also unclear if the juror's memory of defendant was accurate. He estimated that he saw defendant in the area about eight years ago. However, defendant had moved to Alcona county only within the past few years.